Nos. 78,907 and 79,740

SUBWAY RESTAURANTS, INC., *et al., Appellees,* v. NANCY KESSLER and DANE BANKS, *Defendants,* and DAVID M. DUREE, *Appellant.*

(970 P.2d 526)

Opinion filed December 18, 1998.

*Douglas Lancaster,* of Overland Park, argued the cause, and *Greer S. Lang,* of Lawrence, was with him on the briefs for appellant.

*Edward W. Dunham,* of Wiggin and Dana, of New Haven, Connecticut, argued the cause, and *Stanley N. Wilkins,* of Turner and Boisseau, Chartered, of Overland Park, was with him on the brief for appellees.

The opinion of the court was delivered by

SIX, J.: This is a K.S.A. 60-2007(b) attorney sanctions case. David M. Duree's *pro hac vice* admission to practice in Kansas was revoked and he was ordered to pay plaintiff Subway/Doctors Associates, Inc., (DAI) $408,445.25 by District Judge Janice D. Russell. Judge Russell found that Duree deliberately directed the preparation of a false 1989 partnership tax return to support his clients' fraud counterclaims. Judge Lawrence E. Sheppard, after Judge Russell recused herself, denied Duree's K.S.A. 60-259(f) motion to alter or amend, refusing to set aside Judge Russell's order. Duree appeals from the rulings of both judges.

Our jurisdiction is under K.S.A. 20-3018(c), a transfer on our own motion.

We consider two issues: (1) Was Duree denied due process by the circumstances surrounding Judge Russell's recusal, and (2) was there substantial competent evidence to support Judge Russell's imposition of sanctions and revocation of Duree's *pro hac vice* admission? Finding no error, we affirm.

## FACTS

A review of the facts in the underlying lawsuit is necessary to provide background as Duree's objections to the sanctions unfold in this appeal. Defendants in the underlying lawsuit, Nancy Kessler and Dane Banks, contracted with DAI, the national franchisor of Subway sandwich shops, to become a Subway franchisee in Olathe. Kessler and Banks borrowed to finance construction and start-up. They immediately began to pay personal expenses from the borrowed funds, leaving the shop short of the estimated start-up costs.

Lack of operating funds became an immediate problem. Kessler and Banks had seven different checking accounts at four different banks during their 19 months of operation. They bounced 224 checks and failed to deposit at least $112,219.38 in cash receipts during the first 13 months. As a result, the Subway shop's bank statements did not accurately reflect performance. The most accurate documents reflecting performance were Weekly Inventory and Sales Reports (WISR's). DAI requires all franchisees to produce WISR's. Kessler received WISR training. She testified: (1) the forms were simple to fill out, and (2) the WISR's she filled out were accurate. Kessler and Banks used the WISR's in the shop's original tax return prepared September 1990 by H&R Block. The original return showed gross receipts of $139,369 and a profit of $20,143 for the first 8½ months of operation. The figures in the original return were primarily from the WISR's.

DAI filed a collection action against Kessler and Banks in 1990 seeking to recover unpaid franchise royalties and arrearages on a real estate sublease and an equipment lease. Kansas counsel for Kessler and Banks filed a counterclaim in February 1991. Duree was hired sometime in the summer of 1991. Matters against DAI

accounted for about 20% of Duree's practice. Judge Russell admitted Duree *pro hac vice*. (Duree is admitted to practice law in Missouri and Illinois.) He assumed the role as lead counsel. Kessler and Banks' series of five amended counterclaims alleging various claims, including fraud and punitive damages, commenced. The fifth amended counterclaim, central to this appeal, contained 47 allegations of fraud and a claim for punitive damages. Kessler and Banks contended that DAI had fraudulently induced them into purchasing a Subway franchise doomed to fail because of a poor location and lack of promised operational support.

Duree drafted the fifth amended counterclaim. Before filing, he decided to have an amended 1989 tax return prepared for the Subway shop. Duree hired Robert Seiffert, a CPA, from St. Louis. (Duree used Seiffert as an expert in five other cases against DAI.) They were personal friends and had a close working relationship, especially on Subway shop matters. Both Duree and Seiffert knew of the existence, use, and purpose of the shop's WISR's.

Seiffert was given all of the shop's financial documentation, including the WISR's, *but he prepared the amended return using only bank records.* The 1989 amended return reported a loss based on gross receipts of $71,543, compared with $139,369 on the original return. Kessler testified that she and Banks failed to deposit at least half of their cash receipts in the bank. Seiffert also admitted later in his deposition that the bank deposits "for sure understate[d] gross receipts." Seiffert attached a disclaimer to the amended return stating: "We are not able to determine whether this information supplied to us is complete and accurate." (He had been involved in the preparation of between 200 to 400 tax returns but could recall using such a disclaimer on only one or two other returns.)

Intensive and hard-fought discovery continued for the next 2 years. Duree, his co-counsel, and his clients were sanctioned $1,000 for discovery abuse by the special master appointed by Judge Russell to conduct discovery.

DAI submitted 267 statements of uncontroverted fact to support its motion for summary judgment on the fifth amended counterclaim. DAI argued that the reason Kessler and Banks failed in their

business was not because of any misrepresentations made by DAI, but because of their own mismanagement. Most of the uncontroverted facts submitted by DAI came directly from either Kessler's deposition or the franchise agreement.

Kessler and Banks' response to DAI's summary judgment motion: (1) contained many accusations of unethical conduct by DAI, (2) did not comply with Rule 141(b) (1998 Kan. Ct. R. Annot. 176), (3) failed to controvert many of DAI's statements of uncontroverted facts, and instead objected on the grounds of relevancy, materiality, or that the fact was misleading, and (4) moved for sanctions against DAI's counsel Edward Dunham. (Duree later withdrew the motion for sanctions against Dunham.)

In support of the request for sanctions against Dunham, Duree submitted an affidavit from Seiffert. Seiffert repeatedly attempted to controvert facts regarding the shop's losses by pointing to the 1989 amended tax return. DAI had ignored the amended return because the copy provided during discovery was neither signed nor dated and did not appear to have been filed. Seiffert's affidavit claimed that the amended return contained the "correct figures" and that DAI had attempted to mislead the court by relying on the original return.

After reading Seiffert's affidavit, DAI realized Duree was relying on the amended return to support the claim that the Subway shop lost money. Seiffert's claim that DAI had relied on the wrong tax return was questioned at the summary judgment hearing. Sieffert testified in his deposition that he did not know if the amended return had been filed. (His deposition was taken before his sworn affidavit.) Judge Russell then questioned Duree about the amended return. Duree said that he did not know whether the return had been filed, calling it an "evidentiary detail." Judge Russell responded, "I guess it disturbs me, though, that you are attacking another attorney's ethics based upon a tax return that you can't tell me if it has been signed or filed. That disturbs me." Judge Russell was compelled to call a recess so that Duree and local counsel could confer and try to "get their story straight." After the hearing, it was still unclear whether the amended return had been

filed. Counsel for DAI pursued the matter. DAI's motion to reopen discovery as to the 1989 amended return was granted.

Meanwhile, Judge Russell issued her opinion granting summary judgment in favor of DAI on Kessler and Banks' fifth amended counterclaim. She found the counterclaim totally without merit, stating: "It is not just that [defendants] cannot sustain their burden of proving the falsity of these statements; they have no proof whatsoever."

The Court of Appeals affirmed Judge Russell's decision, citing her "thorough and careful examination" of a voluminous record, and characterizing her analysis of the uncontroverted facts as "disciplined." *Subway Restaurants, Inc. v. Kessler,* No. 75,053, unpublished opinion filed February 21, 1997, *rev. denied* 262 Kan. 969 (1997).

## The Sanctions Hearings

Judge Russell held an evidentiary hearing on various motions for sanctions against Duree related to the summary judgment response. After a lengthy proceeding, she imposed a $5,250 monetary sanction against Duree and his cocounsel. Judge Russell found the accusations of impropriety against DAI were unfounded and an attempt to "divert [the court's] attention from the facts of the case." Duree sidestepped the issue of the 1989 amended tax return, professing ignorance and characterizing the issue as a document production dispute. Judge Russell expressly reserved the question of whether further sanctions would be imposed with respect to the amended 1989 tax return.

Additional discovery commenced. Duree testified that he had in fact directed Seiffert to prepare the 1989 amended return *"on the basis of trial strategy" so that Duree would not be "arguing to some jury and/or judge that the original tax return didn't accurately reflect their financial condition. . . . [C]ase management was my primary objective."* Duree knew the contents of the original return and acknowledged that the original return showed a profit, which was inconsistent with his theory of the case.

Seiffert admitted that he based the amended return on bank deposits and not on the WISR's. The bank deposits understated

both gross receipts and revenues. Seiffert had the WISR's in his possession when preparing the amended return. He knew their purpose, but ignored them in his calculations.

Kessler and Banks' local counsel, SuLinda Jamison, had Banks sign the amended return, which she filed with the IRS in January, 1993. Ms. Jamison remained silent in Judge Russell's courtroom as Duree professed he did not know whether the amended return had been filed.

DAI moved to sanction Duree and his cocounsel Carter under K.S.A. 60-2007(b) and K.S.A. 60-211. DAI asked the district court to assess $408,445.25, the fees and costs incurred from the date Duree filed Kessler and Banks' fifth counterclaim until the grant of summary judgment, more than 2 years later. DAI submitted affidavits from Ned Allen Ford, Distinguished Professor of Accountancy at Kansas University, and Geoffrey C. Hazard, Jr., Professor of Law at the University of Pennsylvania. The affidavits supported DAI's claim that Duree had asserted the Kessler-Banks fraud claims in bad faith. Professors Ford and Hazard criticized the actions of Seiffert and Duree. Professor Hazard concluded that Duree "[c]onceived, directed and executed a plan whereby a false document, consisting of a falsified Federal Income Tax return, was prepared for introduction into evidence before [Judge Russell's] court as evidence that his clients suffered economic loss, knowing that such proof was false and that it would mislead the Court and jury." Hazard also concluded that Duree's conduct "justifie[d] the most severe professional sanctions."

Duree vigorously opposed DAI's submissions. Professor Hazard was deposed. Duree moved to strike Hazard's affidavit, arguing he was not a tax expert and his testimony was purchased by DAI. Duree submitted his own 17-page affidavit, swearing: "There is nothing wrong with the Amended 1989 Partnership Tax Return."

On March 8, and April 16, 1996, Judge Russell held hearings on DAI's motion for further sanctions and revocation of Duree's *pro hac vice* status. Hazard testified. Duree's expert was attorney John Nicholas Badgerow, chairman of the Johnson County Bar Association Ethics and Grievance Committee. Badgerow criticized Hazard's opinion that Duree had violated the Model Rules of Profes-

sional Conduct (MRPC), because that opinion is reserved for the disciplinary committee and this court. Badgerow offered no opinion about whether Duree acted unethically. Judge Russell allowed Duree to take the stand and testify in narrative form.

At the conclusion of Hazard's, Badgerow's, and Duree's testimony, Judge Russell said, "I regard this as a very serious matter, and I want to review a number of documents and pleadings before I make a decision in the matter, so I'll be taking it under advisement."

## The Gerstle Visit

As Judge Russell was in her chambers finishing the memorandum decision on DAI's motion for sanctions, attorney John Gerstle, an old friend, stopped by. Judge Russell described the visit in her testimony before Judge Sheppard:

"Well, I had been working on this opinion all day on Friday the 24th of May and probably part of the day on May 23rd, too, although I don't specifically recollect that. . . .

"Late Friday afternoon—it was after 4:30, I'm sure—John Gerstle stopped by my office and said—and asked me if I wanted to go out and have a beer. And I told him that I was working on something, that I was within a few sentences of being done with it and when I finished, I would do that. He said, 'Well, what are you working on?' And I said, 'Well, it's one of my civil cases. You don't know anything about it.' And he persisted and said, 'Well, no, what are you working on?' And I said, 'Well, it's a case called Subway versus Kessler and Banks, and you don't know anything about it. Never been an attorney in the case, you don't know anything about this.' And he said, 'Oh, I do know about that case.' And I said, 'How would you know anything about this? You've not been counsel in this case.' He said, 'I represented Nancy Kessler.' And I knew he didn't represent her in this case. He had never entered an appearance in my case in any fashion. I said—because I had harbored these suspicions that there was a cocaine problem there, and because I knew Gerstle had a largely criminal practice, and, in fact, represents a lot of drug defendants, I said, 'cocaine?' And he said, 'Oh, yeah. Big time.' I said, 'Well, that doesn't have anything to do with this issue.' And he said, 'Well, I know'—he said, 'Well, what are you doing?' And I said, 'There's a motion for sanctions against Mr. Duree.' He said, 'Mr. Duree is a great guy. He's a really nice guy. He paid my fees to represent Nancy Kessler.' And that was, I think, the extent of the conversation."

Judge Russell issued her sanction opinion 1 week later. Duree then moved to alter or amend under K.S.A. 60-259(f). Judge Rus-

sell informed counsel just before beginning the hearing on the motion that she had decided to recuse herself because of an ex parte conversation. She was concerned about her continuing objectivity. The pending motions were reassigned to Judge Lawrence E. Sheppard. Counsel for Duree and DAI jointly requested that Judge Russell provide more information about the ex parte conversation. She agreed. According to Judge Russell, Gerstle's stopping by her chambers was not unusual. He is someone she knows well. Gerstle testified he did not remember "precisely what we talked about or how we got into the subject matter." He further testified that after they were "talking for a bit, it occurred to Judge Russell that since she was involved in the case, maybe it would be inappropriate to continue talking about [it]."

## Judge Sheppard's Rulings

Judge Sheppard denied the K.S.A. 60-259(f) motion, but later, upon a second amended motion, conducted a full evidentiary hearing. Judge Russell testified that the conversation with Gerstle had not influenced her decision. According to Judge Russell, not only had she already made her decision at the time of the Gerstle visit, but also, "[t]he opinion, apart from perhaps the last paragraph, was already in the computer." She said, referencing the hearing on Duree's motion to alter or amend: "I found it impossible to separate [the conversation with Gerstle] from the issues that I was called upon to decide on that day, and I therefore thought it was appropriate for me to recuse myself." Judge Russell testified that she was not "feeling any hostile feeling or ill will toward Mr. Duree" at the time she made her decision to sanction him.

Judge Sheppard upheld Judge Russell's decision, reasoning:

"In listening to her testimony, first of all, I believe Judge Russell's testimony, not because she's a colleague and a fellow jurist, but because she testified under oath forthrightly, without hesitation, and with obvious knowledge of the facts, and in a most unusual proceeding which allowed counsel to go into her subjective thought process as to how she arrived at her decision. She was most candid in that regard and unequivocating in terms of the examination by both counsel. She clearly had firm reasons, as set forth in her memorandum decision, for making the ruling of sanctions as to David Duree and her revocation of Mr. Duree's pro hac vice status in this particular case.

"The Court, then, finds that a reasonable person would believe, based upon the testimony of Judge Russell, that there was no influence or bias on her part with respect to the decision that was filed. It was a measured decision that she reached only after hearing the evidence in the case from the trial record and from all of the preceding proceedings."

## DISCUSSION

### Due Process

We initially review Judge Sheppard's denial of Duree's K.S.A. 60-259(f) motion to alter and amend. Our standard of review is abuse of discretion. See *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994); 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2818 (1995) (abuse of discretion is well-settled standard of review on motion to alter or amend). Duree claims that Judge Russell's failure to recuse herself immediately after the ex parte communication with Gerstle denied him due process. Specifically, he claims:

"Judge Russell's ex parte communication with Gerstle and her admitted inability to be fair and impartial, as well as her admitted inability to separate her extrajudicial knowledge from the issues she was being asked to decide, unquestionably influenced her in deciding DAI's motions for sanctions and to revoke Duree's pro hac vice admission and deprived Duree of his right to have these most serious allegations of misconduct decided by a fair and impartial court."

Duree's due process claim lacks merit. Throughout his brief, Duree misstates the record and misconstrues Judge Russell's testimony about the ex parte conversation. Judge Russell admitted neither an inability to be fair and impartial nor an inability to separate extrajudicial knowledge from the issue of whether to award the sanctions. Judge Russell recused herself because she did not want to decide the motion to alter or amend the sanctions award. She unequivocally testified that she fairly and impartially decided the motion to award sanctions. She also testified that she did not harbor any ill will toward Duree.

We have employed a two-part test in deciding whether to vacate a judgment because of a judge's failure to recuse: (1) Was the judge required to recuse himself or herself under the Code of Judicial Conduct, Rule 601A Canon 3E(1) (1998 Kan. Ct. R. Annot. 455) before making the decision at issue; and (2) if so, was there actual

bias or prejudice that warrants setting the decision aside? See *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984).

A judge has a duty to recuse when impartiality might reasonably be questioned. *Logan*, 236 Kan. at 86. Applying the *Logan* standard here, Judge Sheppard found that a reasonable person would believe, based on the testimony of Judge Russell, that there was no influence or bias on her part.

Duree has had an independent review of his claims. Judge Sheppard conducted a full evidentiary hearing to learn whether Judge Russell should have recused herself earlier. The hearing afforded Judge Sheppard an opportunity to measure Judge Russell's demeanor, the quality of her memory, and her credibility. Judge Sheppard found that there was bad timing as to the Gerstle conversation but did not conclude that she had acted in anything but an impartial manner.

Duree was afforded notice and a hearing at every stage of the process. He presented witnesses and was even allowed to testify in a narrative form at the hearing on sanctions. Judge Russell testified that she made her decision on admission revocation and monetary sanctions without considering the Gerstle conversation. Furthermore, Gerstle made positive statements about Duree, saying, "Duree is a great guy. He's really a nice guy." We find Judge Sheppard did not abuse his discretion in denying Duree's motion to alter or amend.

## The Sanctions

We next consider whether there was substantial competent evidence to support Judge Russell's decision imposing a monetary sanction under K.S.A. 60-2007, and revoking Duree's *pro hac vice* admission. See *In re Marriage of Stockham*, 23 Kan. App. 2d 197, Syl ¶ 1, 928 P.2d 104 (1996). The K.S.A. 60-2007 standard of review appears to have various descriptions, from "each case must be carefully considered on its merits and no universal rule should be applied," *Rood v. Kansas City Power & Light Co.*, 243 Kan. 14, 23, 755 P.2d 502 (1988), to "abuse of discretion," *Summers v. Montgomery Elevator Co.*, 243 Kan. 393, 399, 757 P.2d 1255 (1988), to "substantial competent evidence," *Giblin v. Giblin*, 253

Kan. 240, 252, 854 P.2d 816 (1993). *Giblin* also holds that the court can determine de novo what the facts establish or if the K.S.A. 60-2007 requirement of a "reasonable basis in fact," to be decided on a case-by-case basis, has been met. 253 Kan. at 254.

Under K.S.A. 60-2007, sanctions were not a matter of discretion. (K.S.A. 60-2007 has been repealed; see L. 1997, ch. 173, § 38.) The Kansas Judicial Council comments to HB 2007 state:

"The advisory committee recommends the repeal of 60-2007 in that it overlaps with, and contains somewhat different standards from, 60-211. K.S.A. 60-2007 was adopted in 1982 and at that time there were no provisions in 60-211 for assessing costs for frivolous acts. Subsequent amendments to 60-211 appear to remove the need for 60-2007."

See 2 Gard's Kansas C. Civ. Proc. 3d, Commentary § 60-2007 (1997).

K.S.A. 60-2007 directed that sanctions shall be imposed if the requirements of the statute were shown to be present:

"(b) At the time of assessment of the costs . . . if the court finds that a party, in a pleading, motion or response thereto, has asserted a claim or defense, including setoffs and counterclaims . . . without a reasonable basis in fact and not in good faith, the court shall assess against the party as additional costs of the action, and allow to the other parties, reasonable attorneys fees and expenses incurred by the other parties as a result of such claim, defense or denial. An attorney may be held individually . . . liable . . . for such additional costs where the court finds that the attorney knowingly and not in good faith asserted such a claim, defense or denial or, having gained knowledge of its falsity, failed to inform the court promptly that such claim, defense or denial was without reasonable basis in fact."

Two separate requirements must be met before attorney fees and expenses may be assessed under K.S.A. 60-2007(b): (1) The claim asserted must be without a reasonable basis in fact; and (2) the claim was not asserted in good faith. *Giblin*, 253 Kan. at 252.

A dismissal on summary judgment does not itself indicate that the claim was frivolous. *Rood*, 243 Kan. at 24. Every lawyer who loses on summary judgment should not be vulnerable to sanctions. Proof that Kessler and Banks' fifth amended counterclaim was without a reasonable basis in fact is found in Judge Russell's summary judgment opinion. Judge Russell first concluded that out of 267 statements of uncontroverted fact submitted by DAI, there

was a good faith controversy concerning only four facts. None of the four were material to the fraud counterclaim. Further, Judge Russell found that there was *no evidence* to support Kessler and Banks' claims, much less the "clear and convincing evidence" that is required to prove a fraud claim. Judge Russell repeatedly cited gaps in the evidence.

For example:

"[T]here is *no evidence* that defendants' losses were caused by the fraud or misrepresentation of the plaintiff."

There was *no way for Kessler and Banks to prove causation* because their own expert testified that "the books and records they maintained are so chaotic that no business decisions can be made from them."

"Kessler admitted in her deposition that she has *no proof* of the falsity of some of the defendants' alleged fraudulent statements."

"After five years of exhaustive discovery defendants still have *no proof* of the falsity of these statements. It is not just that they cannot sustain their burden of proving the falsity of these statements; *they have no proof whatsoever.*"

The defendants argument "simply flies in the face of contract law."

"Kessler admitted that she had *no evidence* to support her claim . . . ."
"[Kessler] has *no proof* that either of these beliefs on her part are true."
"Defendants have had ample time to conduct discovery and come forward with proof of plaintiffs' fraud and duplicity, but have not been able to do so." (Emphasis added.)

Judge Russell, in concluding, observed why Duree's theory that DAI duped Kessler and Banks into signing a franchise contract which was to set them up to fail defied common sense.

"The initial franchise fee for a Subway shop is low—only $7,500. Common sense would indicate that the franchisor's principal hope for making money from the franchise agreement lies in the 8% royalty payments it is to receive from the gross weekly sales."

Judge Russell's findings show that the fraud claims in the fifth amended counterclaim were brought without a reasonable basis in fact. Her summary judgment decision was issued June 9, 1995, almost 1 year *before* the ex parte communication with Gerstle.

## Good Faith

We conclude the record reflects substantial competent evidence that Duree neither asserted nor pursued the fraud claims in good faith. Duree knew the fraud counterclaim was problematic as early as 1992, when he orchestrated the preparation of the amended 1989 tax return. He directed Seiffert to prepare the amended return and used it to oppose DAI's motion for summary judgment.

DAI's motion for summary judgment was based, in part, on the fact that Kessler and Banks could not show any loss in their business. Duree used the 1989 amended tax return not only to attempt to controvert facts but also to persuade Judge Russell that DAI's motion for summary judgment was frivolous. The Seiffert affidavit directly targets the problems with Kessler and Banks' case. Seiffert tried to justify Kessler and Banks' mismanagement and used the amended return to dispute DAI's uncontroverted fact that the franchise was profitable. Duree's response to the DAI summary judgment motion on behalf of Kessler and Banks admitted a few of the facts but attempted to deny most of them without any citation to where conflicting evidence might be found. Judge Russell was forced to carefully sort through Duree's deliberate "red herring" distracting responses and the record to decide what facts were genuinely in controversy. At the time Duree was arguing DAI should be sanctioned for filing the summary judgment motion, he had not complied with Rule 141(b). He denied uncontroverted facts on behalf of his clients without any basis in the record to support the denials.

Judge Russell found that Duree had attempted "to divert [her] attention from the facts of the case, to try to make [her] angry at plaintiff and plaintiff's attorneys." Such an attempt shows Duree's lack of good faith. At the hearing at which Duree was sanctioned $5,250, the 1989 amended tax return first became an issue. Duree had questioned the ethics of DAI's counsel in referencing the original 1989 return prepared at Kessler's request by H & R Block. DAI took strong exception. The sanctions hearing would probably not have taken place but for Duree's attempt to divert Judge Russell's attention from the merits of the case by accusing DAI of impropriety. Duree's predicament is self-induced.

## Knowledge and Intent

Duree argues that to impose sanctions, findings that he acted intentionally, with actual knowledge that the amended return was false, are necessary. He asserts there was no evidence from which Judge Russell could infer that he had actual knowledge of the alleged falsity of the amended return. Duree confuses the legal standards for sanctions under K.S.A. 60-2007(b) with the MRPC. See Rule 226 (1998 Kan. Ct. R. Annot. 273). Judge Russell examined the MRPC in making her decision but explicitly noted that " '[t]he power to regulate the bar, including the power to discipline its members rests inherently and exclusively with [the Supreme Court].' " (quoting *State ex rel. Stephan v. Smith*, 242 Kan. 336, Syl. ¶ 12, 747 P.2d 816 [1987]). Judge Russell used the MRPC for guidance, but not as authority to sanction Duree.

Duree also observes there is no way for us to conclude that he had "actual knowledge of the alleged falsity of the Amended Return." He makes this argument holding an L.L.M. in Taxation from Washington University School of Law (St. Louis). Moreover, Duree continues to advance the notion that there is nothing wrong with the 1989 amended return. He has argued many things on appeal, but he has not admitted that the amended return was essentially a false document. Instead, he points the finger in all directions, at his co-counsel, Robert L. Carter, at Judge Russell, at counsel for DAI, Edward Dunham, and even at his own clients. He implies that he was an unwitting participant in an unfortunate, but not illegal or unethical pursuit of fraud claims.

The 1989 amended tax return was evidence of Duree's misconduct. Judge Russell knew after ruling on the summary judgment motion that Kessler and Banks' fifth amended counterclaim was without a reasonable basis in fact. Duree's involvement in the preparation of the 1989 amended return showed Judge Russell that Duree understood the baseless nature of the claims. Judge Russell discovered that Duree had the amended return prepared to bolster Kessler and Banks' claim. It then became clear that Duree himself understood the shortcomings of his clients' case from the outset but tried to cover them up by fabricating evidence. The cover-up

proved Duree had acted knowingly and not in good faith both in drafting the fraud counterclaim and in opposing DAI's motion for summary judgment.

The purpose of K.S.A. 60-2007 is to penalize willful misuses of the judicial process. *Smith v. Dunn*, 11 Kan. App. 2d 343, 348, 720 P.2d 1137 (1986). Judge Russell found that Duree tendered the 1989 amended return to the court as an accurate and reliable document. Judge Russell also found that the amended return was neither reliable nor correct in light of Kessler's own testimony. Kessler testified that she failed to deposit more than half of the Subway shop's gross receipts. In spite of his knowledge of Kessler's creative personal financing and the existence of a reliable original 1989 return, Duree directed the preparation of the amended return. These factual findings supported Judge Russell's legal conclusion that Duree asserted the fifth amended counterclaim without any good faith basis in fact or law. Her conclusion is supported by substantial competent evidence and is sufficient to award sanctions under K.S.A. 60-2007. District courts are encouraged to impose sanctions under K.S.A. 60-2007 to protect litigants from harassment in clear cases of violation of professional duty. *Rood*, 243 Kan. at 22.

Our review of the voluminous record supports Judge Russell's conclusions. (The record consists of 55 volumes. The 32 volumes of pleadings span 7,274 pages. The 23 volumes of transcripts exceed 1,500 pages.) She concluded in her memorandum opinion on sanctions:

"It is the amended 1989 tax return that is at the heart of the motions at hand. Mr. Dunham charges that Mr. Duree manufactured the amended 1989 tax returns to serve as a basis for the defendants' fraud claim. After carefully considering the evidence, the court has reluctantly concluded that Mr. Dunham is correct.

. . . .

"The inescapable conclusion from these facts is that Mr. Duree deliberately caused to be prepared a false tax return for use in this litigation."

Duree does not challenge the reasonableness of the fees, the hourly rates, the amount of work performed, or the expenses claimed. Duree's position is that the monetary sanction is not proper. The $408,445.25 includes, among other items, attorney

fees: Wiggin & Dana (Dunham's firm), $272,263.51, and Turner & Boisseau (Kansas counsel), $74,077.03. Expenses included: accountant Arthur Anderson, $35,141; video taping, $3,416.20; and court reporters, $22,276.14.

We observe that all litigation must be orchestrated on a common dominant theme, the pursuit of truth. Candor and credibility, are the twin professional characteristics that mark a true officer of the court.

In conclusion, the Friday afternoon chambers visit between two old friends requires comment. As Judge Sheppard noted:

"The timing of the discussion is important . . . . Had it occurred the day after filing of the memorandum decision, there would have been no real reason or opportunity to complain about the substance of the ruling. As it is, the timing was absolutely terrible in terms of eroding confidence in the independent exercise of judgment on the part of Judge Russell."

Duree was Kessler and Banks' lead counsel in the civil case. Gerstle had been counsel for Kessler on her forgery charges, her plea sentencing, and her probation revocation hearing for allegedly failing to submit to a drug screen. Duree paid part of Gerstle's fee for representing Kessler on the forgery charges. Gerstle and Duree discussed Gerstle's criminal representation of Kessler. The gist of the discussion, according to Gerstle, was that Duree wanted Kessler to have skilled criminal representation, because if she had a criminal record or particularly if she went to jail, it would be harder for Duree to successfully prosecute the civil action. Gerstle told Judge Russell, "Mr. Duree is a great guy. He's a really nice guy. He paid my fees to represent Nancy Kessler."

Judge Russell's candor in informing counsel of her ex parte conversation with Gerstle is commended. However, the ex parte conversation was clearly inappropriate. See Rule 601A Canons 1, 2A, and 3B(7) (1998 Kan. Ct. R. Annot. 449, 451-52). Gerstle's professional curiosity and persistent questioning of Judge Russell as she sat behind her word processor was also clearly inappropriate. See MRPC Preamble: A Lawyer's Responsibilities, Scope, and 3.5(c) (1998 Kan. Ct. R. Annot. 274-78, 360).

Affirmed.