DOCTOR'S ASSOCIATES, INC., *et al.*, Plaintiffs-Appellees, v. DAVID M. DUREE, Defendant-Appellant.

First District (3rd Division) No. 1—00—0163

Opinion filed March 14, 2001.—Rehearing denied April 12, 2001.

1034

David M. Duree, of O'Fallon, appellant *pro se.*

Jenner & Block, of Chicago (Anton R. Valukas, Dean N. Panos, and Andrew B. Birge, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:
In this case, defendant, David Duree, appeals the order of the

circuit court refusing to set aside and vacate a Kansas state court judgment domesticated by plaintiffs, Doctor's Associates, Inc., and Subway Restaurants, Inc. (collectively referred to herein as DAI/SRI), under the Illinois version of the Uniform Enforcement of Foreign Judgments Act (Act) (735 ILCS 5/12—650 *et seq.* (West 1998)). The Kansas judgment represented an award of sanctions in favor of DAI and against Duree personally for costs incurred by DAI in defending a counterclaim determined to have been filed in bad faith by Duree as attorney for third parties sued by DAI in Kansas state court. On appeal, Duree argues the circuit court erred in giving the Kansas judgment full faith and credit under the Act because: (1) the Kansas state court lacked subject matter jurisdiction; (2) the sanctions award was procured by extrinsic fraud; (3) he has been released by DAI from any obligation to pay the amount of the sanctions judgment; and (4) he was denied due process of law in the Kansas proceedings. Duree additionally contends he was entitled to relief from the Kansas judgment pursuant to section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 1998)). For the following reasons, we affirm.

## BACKGROUND

A review of the pertinent facts on appeal reveals that DAI, a national franchiser of Subway sandwich shops, instituted litigation in 1990 in the state district court of Kansas against two of its franchise owners, Nancy Kessler and Dane Banks, to recover unpaid franchise royalties and arrearages on real estate and equipment leases. Duree, who was not licensed to practice law in Kansas, was admitted by the trial judge, Judge Janice Russell, *pro hac vice* on behalf of Kessler and Banks. Duree assumed the role of lead counsel for his clients and, during the course of litigation, he filed a series of counterclaims, culminating in a fifth-amended pleading, against DAI for its alleged fraudulent inducement of Kessler and Banks to purchase their Subway franchise.

Before filing the fifth-amended counterclaim, Duree decided as a matter of "trial strategy" to have an amended 1989 tax return prepared for the Kessler/Banks Subway shop. The original 1989 tax return for the store filed with the Internal Revenue Service reflected gross receipts of $139,369 and a profit of $20,143 during the first 8½ months of the store's operations.

Due to the mismanagement of the store's finances by Kessler and Banks, the store's bank statements did not accurately reflect the performance of the business. The most accurate materials indicative of true performance were found in the store's weekly inventory and sales reports (WISRs). The figures contained in these WISRs were used by Kessler and Banks to prepare the original tax return.

Duree retained the services of Robert Seiffert, a certified public accountant from St. Louis and friend of Duree who had been engaged by Duree to assist in previous litigation brought against DAI. While knowing of the existence, use and purpose of the store's WISRs, Seiffert prepared the amended tax return using only the store's bank records. Duree was similarly aware of the WISRs' existence and their use and purpose in determining the store's taxable income.

The 1989 amended tax return prepared by Seiffert reported an operating loss based on gross receipts of $71,543, which was substantially less than the gross receipts of $139,369 reported on the original return. Seiffert knew at the time he prepared the amended return that the bank deposits for the store undoubtedly understated gross receipts. Attached to the amended tax return upon its filing with the IRS was a disclaimer prepared by Seiffert that read he was unable to "determine whether [the] information supplied to [him in preparing the amended return was] complete and accurate."

Discovery on the Kessler/Banks counterclaim lasted two years, at which time DAI successfully moved for summary judgment upon Judge Russell's finding that the amended counterclaim completely lacked merit.

DAI followed by moving for sanctions against Duree under Kansas statutes section 60—2007 (Kan. Stat. Ann. § 60—2007 (Supp. 2000)) (repealed) and section 60—211 (Kan. Stat. Ann. § 60—211 (1994)) for costs and expenses incurred in defending the fifth-amended counterclaim. After a full evidentiary hearing, Judge Russell concluded that Duree presented the Kessler/Banks counterclaim in bad faith and without a reasonable basis in fact and, on those grounds, awarded DAI $408,445.25 in fees and costs. Judge Russell specifically determined that the 1989 amended tax return was deliberately falsified and manufactured for the sole purpose of supporting the counterclaim. Judge Russell entered a formal written journal entry of judgment reflecting her decision, which was prepared by DAI's attorney, on July 19, 1996.

Duree responded by filing a postjudgment motion to alter or amend Judge Russell's order. Prior to a hearing on that motion, Judge Russell recused herself, citing concerns about her continuing objectivity in light of an *ex parte* conversation she had with a long-time friend and colleague, John Gerstle. Gerstle visited Judge Russell in her chambers on May 24, 1996, while the judge was in the process of completing the memorandum decision on DAI's sanctions motion. During the visit, Judge Russell and Gerstle discussed, *inter alia*, Gerstle's then representation of Kessler in an unrelated criminal matter and DAI's sanctions action that was pending against Duree. Judge Russell removed

herself upon doubts she would be able to rule fairly on the matters raised in Duree's postjudgment motions.

The matter was reassigned to Judge Lawrence Sheppard. Following the presentation of evidence, including the testimony of Judge Russell in which she explained that her conversation with Gerstle had no influence on her decision and that she had already decided the sanction case before Gerstle's visit, Judge Sheppard found that Judge Russell had not acted with bias against Duree and, accordingly, denied Duree's requests for postjudgment relief.

Duree pursued the matter on review and, on December 18, 1998, the Kansas Supreme Court affirmed both Judge Russell's imposition of sanctions against Duree and Judge Sheppard's denial of Duree's posttrial motion. *Subway Restaurants, Inc. v. Kessler*, 266 Kan. 433, 434, 970 P.2d 526, 528 (1998). The court initially reviewed Judge Sheppard's ruling and addressed Duree's contention that Judge Russell's failure to recuse herself immediately after her *ex parte* communication with Gerstle denied him due process of law because that conversation adversely affected Judge Russell's ability to rule objectively and "unquestionably influenced" her decision to grant DAI's motion. The court found Duree's claim without merit, finding that the evidentiary record unequivocally demonstrated that Judge Russell acted impartially in rendering her decision. *Subway*, 266 Kan. at 440, 970 P.2d at 532. The court further stressed that Duree was afforded notice and a hearing at every stage of the sanctions proceeding. *Subway*, 266 Kan. at 442, 970 P.2d at 533.

The court next considered and rejected Duree's claim that Judge Russell's decision was not sufficiently supported by the evidence.[1] The court, relying on Judge Russell's summary judgment opinion, first concluded that the Kessler/Banks counterclaim lacked any reasonable factual basis. The court noted that of the multitude of uncontroverted facts cited by DAI in its summary judgment motion, there was a good-faith controversy as to only four facts and, even then, those facts were not material to the counterclaim. *Subway*, 266 Kan. at 444, 970 P.2d at 534. The court also cited the numerous gaps and deficiencies in the proofs submitted by Duree as highlighted by Judge Russell in making her ruling. *Subway*, 266 Kan. at 444, 970 P.2d at 534. According to the court, Judge Russell's findings demonstrated that "the fraud claims in the fifth amended counterclaim were brought without a reasonable basis in fact." *Subway*, 266 Kan. at 444, 970 P.2d at 534.

---

[1]For sanctions to be assessed under Kansas law, the petitioning party must show that the claim (1) lacked any reasonable basis in fact and (2) was not asserted in good faith. *Subway*, 266 Kan. at 444, 970 P.2d at 534.

The court additionally concluded that the evidence overwhelmingly established that Duree neither asserted nor pursued the fraud claims in good faith. The court found the evidence sufficient to show that the 1989 amended tax return prepared by Seiffert was indeed false and deliberately prepared for the purpose of bolstering the counterclaims asserted by Kessler and Banks. *Subway*, 266 Kan. at 445, 970 P.2d at 535. The court further focused on Duree's conduct in opposing DAI's motion for summary judgment, noting that Duree was in violation of Kansas Supreme Court rules governing motion practice by denying uncontroverted facts on behalf of his clients without any basis in the record and that, pursuant to the observation of Judge Russell, he had sought to divert the court's attention from the true facts of the case by attempting to make the court angry at DAI and its attorneys. *Subway*, 266 Kan. at 445, 970 P.2d at 535. These circumstances, according to the court, demonstrated Duree's lack of good faith. *Subway*, 266 Kan. at 445, 970 P.2d at 534-35. Finding that Duree acted in bad faith by filing a counterclaim that lacked a reasonable factual basis, the court affirmed Judge Russell's award in favor of DAI. *Subway*, 266 Kan. at 447, 970 P.2d at 536.

Thereafter, on October 5, 1999, DAI filed the Kansas judgment with the circuit court of Cook County under the Act for purposes of enforcing the award as an Illinois judgment. Over various objections raised by Duree, the circuit court ordered that the Kansas judgment be given full faith and credit in Illinois. Duree now appeals from that ruling.

## ANALYSIS

■ The full faith and credit clause of the United States Constitution provides that full faith and credit must be given to the judicial proceedings of every other state. U.S. Const., art. IV, § 1; *Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 1094, 702 N.E.2d 593, 597 (1998). Full faith and credit demands that once an action is pursued to a final judgment, that judgment ought to be as conclusive in every other court as it is in the court where it was rendered. *First Wisconsin National Bank v. Kramer*, 202 Ill. App. 3d 1043, 1047, 560 N.E.2d 938, 941 (1990). The Act is intended to implement the Constitution's full faith and credit clause and to facilitate the enforcement of interstate judgments by providing a summary procedure through which a judgment creditor may seek enforcement expeditiously in any jurisdiction where the judgment debtor is found. *Firstar Bank Milwaukee v. Cole*, 287 Ill. App. 3d 381, 382-83, 678 N.E.2d 668, 670 (1997).

■ In the spirit of the full faith and credit clause and in accordance with the Act's intended purpose, the enforcing court will not

consider the merits of the foreign judgment because such judgment is *res judicata* as to its nature and the amount awarded, as well as to any and all defenses that could have been raised in the original court. *Thorson v. La Salle National Bank*, 303 Ill. App. 3d 711, 715, 708 N.E.2d 543, 546 (1999); *Firstar Bank*, 287 Ill. App. 3d at 383, 678 N.E.2d at 670. While a judgment debtor may collaterally attack the foreign judgment to prevent its enforcement once the judgment has been properly filed with the circuit court, such an attack may not be predicated on grounds that could have been raised before the foreign court when the judgment was rendered. *Massie v. Minor*, 307 Ill. App. 3d 115, 120, 716 N.E.2d 857, 862 (1999); *Practice Management Associates, Inc. v. Thurston*, 225 Ill. App. 3d 470, 473, 588 N.E.2d 408, 410 (1992).

■ Collateral attacks by a judgment debtor are quite limited and may only be sustained on grounds that the rendering court lacked subject matter jurisdiction of the case or personal jurisdiction over the defending party, that the foreign judgment was procured by extrinsic fraud (*Massie*, 307 Ill. App. 3d at 119, 716 N.E.2d at 861; *Thorson*, 303 Ill. App. 3d at 715, 708 N.E.2d at 546), that the judgment obligation has been satisfied, released, waived or discharged (*Meyer v. First American Title Insurance Agency of Mohave, Inc.*, 285 Ill. App. 3d 330, 335, 674 N.E.2d 496, 499 (1996); *Thompson v. Safeway Enterprises, Inc.*, 67 Ill. App. 3d 914, 916, 385 N.E.2d 702, 705 (1978)), that the defending party was denied due process of law (*Meyer*, 285 Ill. App. 3d at 335, 674 N.E.2d at 499), or any other ground that would otherwise render the foreign judgment invalid or unenforceable (*Meyer*, 285 Ill. App. 3d at 335, 674 N.E.2d at 499; see also 4 C. Nichols, Illinois Civil Practice § 89.14, at 689 (rev. ed. 1997) (foreign "judgment is not subject to collateral attack, and other than payment, release, waiver or discharge, the only defenses which may be asserted are fraud in the procurement of the judgment and lack of jurisdiction")).

■ Section 12—652 of the Act provides that once a foreign judgment has been filed by the judgment creditor in accordance with its provisions, it "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying" a judgment as entered by our circuit courts. 735 ILCS 5/12—652(a) (West 1998). Further, upon a proper filing, the court clerk "shall treat the foreign judgment in the same manner as a judgment of the circuit court." 735 ILCS 5/12—652(a) (West 1998). Hence, the proper filing of a foreign judgment has the effect of instantly creating an enforceable Illinois judgment under the Act and the judgment creditor may thereafter proceed to enforce the judgment against the judgment debtor. 735 ILCS 5/12—652(a) (West 1998); see also *Dear v.*

*Russo*, 973 S.W.2d 445, 446 (Tex. Ct. App. 1998) (stating that "[w]hen a final foreign judgment is properly filed under the Uniform Act, the filing has the effect of initiating an enforcement proceeding and instantly rendering a final judgment").

■ In the instant case, the record reveals that the Kansas judgment was filed by DAI in accordance with the Act's provisions and, therefore, became an enforceable Illinois judgment on October 5, 1998. Under the express language of the Act, Duree was then permitted to invoke the same procedures, defenses and proceedings available to reopening, vacating or staying the Kansas decree as could be done with any other judgment entered in this state. Duree here[2] sought to set aside the Kansas judgment on the asserted grounds that (1) the judgment was rendered without proper subject matter jurisdiction, (2) the judgment was procured by extrinsic fraud, (3) the judgment has been released by DAI, (4) Duree was not afforded due process by the Kansas courts, and (5) section 2—1401 relief from the judgment is appropriate. We will consider each of Duree's contentions in turn.

## I

Duree first seeks to defeat the Kansas judgment on the basis that the Kansas district court lacked subject matter jurisdiction. Duree asserts the imposition of sanctions rested on Judge Russell's findings (1) that he intentionally falsified the amended 1989 tax return to support the Kessler/Banks counterclaim and (2) that his actions constituted a violation of Kansas' rules of professional conduct. According to Duree, Judge Russell lacked jurisdiction to make either determination and maintains that only the federal courts and the Kansas agency of profession regulation, respectively, possess such decision-making authority.

■ ■ The law is well settled that a judgment rendered by a court without subject matter jurisdiction is void and, as such, may be collaterally attacked at any time. *Morey Fish Co. v. Rymer Foods, Inc.*, 158 Ill. 2d 179, 186-87, 632 N.E.2d 1020, 1024 (1994); *People ex rel. Brzica v. Village of Lake Barrington*, 268 Ill. App. 3d 420, 424, 644

---

[2]In his petition, Duree first objected to the registration of the Kansas order as an Illinois judgment. Alternatively, Duree sought to have the judgment vacated pursuant to section 2—1401. While the procedure set forth in the original version of the Act provided for the filing of objections to the registration of the foreign judgment (Ill. Rev. Stat. 1989, ch. 110, par. 12—608), the current legislation dispenses with the registration process and does not require either a petition or order of registration before a foreign judgment will be domesticated in Illinois. Rather, enforcement of the foreign judgment occurs upon its proper filing, and since objections are no longer effective, the judgment debtor must proceed against the judgment collaterally.

N.E.2d 66, 69-70 (1994). A judgment rendered by a foreign court of general jurisdiction carries a strong legal presumption that the court had jurisdiction to hear and dispose of the case and that its proceedings conformed to the law of the state in which it was rendered. *Sackett Enterprises, Inc. v. Staren*, 211 Ill. App. 3d 997, 1001, 570 N.E.2d 702, 703 (1991). The judgment debtor bears the burden of rebutting this presumption by presenting certain and positive averments to negate every fact from which the court's jurisdiction could arise. *Ace Metal Fabricating Co. v. Arvid C. Walberg & Co.*, 135 Ill. App. 3d 452, 457, 481 N.E.2d 1066, 1070 (1985). The question of whether the Kansas district court possessed the subject matter jurisdiction to enter sanctions against Duree presents a question of law that is reviewed by this court *de novo. Reyes v. Court of Claims*, 299 Ill. App. 3d 1097, 1101, 702 N.E.2d 224, 228 (1998); *La Verne v. Jackman*, 84 Ill. App. 2d 445, 454, 228 N.E.2d 249, 254 (1967).

Duree never challenges the Kansas district court's authority to enter sanctions against him. Instead, Duree attacks Judge Russell's authority to make findings regarding the accuracy of the amended tax return and the propriety of his conduct in light of Kansas' rules of professional conduct. Undoubtedly, Judge Russell had the power under Kansas statutory law to impose sanctions against Duree, a point Duree seemingly recognizes in his brief. Judge Russell did not proceed under any federal tax law or regulation or professional rule[3] in making her decision but, rather, acted under sections 60—2007 and 60—211, the statutes upon which DAI's motion was predicated. The findings of the Kansas court cited by Duree represent simply factual determinations made by the judge in considering whether the Kessler/Banks counterclaim lacked a good-faith filing and, thus, was sanctionable. The record fails to show, as advocated by Duree, that the Kansas court was without the proper jurisdiction to render its decision.

## II

We next consider Duree's assertions that the Kansas judgment was procured through extrinsic fraud. Namely, Duree cites Judge Russell's asserted inability to be fair and impartial in issuing her sanctions award, the drafting of Judge Russell's journal entry by DAI's counsel, Judge Sheppard's purported refusal to consider and rule on the merits of Duree's postsanction motion, and the Kansas Supreme Court's asserted "lack of command of the [foregoing] facts" in affirming Judge Russell's decision.

---

[3]The Kansas Supreme Court explicitly held that Judge Russell used the model rules for guidance and not as authority to sanction Duree. *Subway*, 266 Kan. at 446, 970 P.2d at 535.

■ A judgment entered by a court, otherwise exercising proper jurisdiction, is open to collateral attack where fraud existed in its procurement. *Standard Management Realty Co. v. Johnson,* 157 Ill. App. 3d 919, 924, 510 N.E.2d 986, 989 (1987). Only fraud that is extrinsic, as opposed to intrinsic, will render a foreign judgment void and unenforceable. *Massie,* 307 Ill. App. 3d at 119, 716 N.E.2d at 861; *Pinnacle Arabians, Inc. v. Schmidt,* 274 Ill. App. 3d 504, 510, 654 N.E.2d 262, 266 (1995). "Extrinsic fraud" is that which prevents the rendering court from acquiring jurisdiction or merely gives it colorable jurisdiction over the matter. *Pinnacle Arabians,* 274 Ill. App. 3d at 510, 654 N.E.2d at 266. Extrinsic fraud has also been described as conduct that is collateral to the issues in the case and that which prevents the unsuccessful party from having a fair opportunity to participate and defend in the action. *Jones v. Jacobs,* 988 S.W.2d 97, 100-01 (Mo. App. 1999); *Gomez v. Espinosa,* 466 So. 2d 1201, 1204 (Fla. App. 1985); see also *Falcon v. Faulkner,* 209 Ill. App. 3d 1, 13, 567 N.E.2d 686, 736 (1991) (citing as classic examples of extrinsic fraud situations where the unsuccessful party has been kept away from the courthouse or been kept ignorant of the suit).

■ "Intrinsic fraud," on the other hand, is fraud that occurs after the forum court acquires jurisdiction, such as false testimony or concealment. *Massie,* 307 Ill. App. 3d at 119, 716 N.E.2d at 861; see also *Edwards v. Centex Real Estate Corp.,* 53 Cal. App. 4th 15, 41, 61 Cal. Rptr. 2d 518, 534-35 (1997) ("[i]ntrinsic fraud *** is fraud which goes to the actual merits of the litigation *** and does not preclude any party from raising a claim or defense; nor does it prevent a party from knowing about or attending a proceeding"). Unlike extrinsic fraud, fraud that is intrinsic to the proceeding will not defeat the effect of a foreign judgment. *Massie,* 307 Ill. App. 3d at 119, 716 N.E.2d at 861.

■ The party attacking the foreign judgment on the ground of extrinsic fraud carries the burden of supporting his claim with adequate evidentiary support and, thus, is a factual determination that will be given due deference on review. Conversely, the preliminary question of whether the specific assertions of fraud are sufficient to constitute extrinsic fraud is a legal matter that is considered *de novo*.

■ The specific instances of fraud cited by Duree in this case were clearly intrinsic, and not collateral, to the Kansas proceedings and, thus, are insufficient to invalidate Judge Russell's order. Each instance of fraud neither prevented the Kansas court from acquiring jurisdiction nor precluded Duree from fairly opposing DAI's petition. Indeed, the Kansas Supreme Court specifically noted, with respect to the latter point, that Duree was provided ample opportunity to appear and defend in the foreign proceedings.

### III

■ Duree next contends he has been released by DAI from the Kansas judgment. Section 12—183(h) of the Code provides that "[u]pon the filing of a release or satisfaction in full satisfaction of judgment, signed by the party in whose favor the judgment was entered or his or her attorney, the court shall vacate the judgment, and dismiss the action." 735 ILCS 5/12—183(h) (West 1998). The party who seeks the benefit of a release bears the burden of establishing the existence thereof, and the decision of the circuit court as to whether the release has been sufficiently proven will not be disturbed absent an abuse of discretion. *Meyer*, 285 Ill. App. 3d at 336, 674 N.E.2d at 500.

To support his claim of release, Duree tendered a "Settlement and Release" (the Agreement) executed by DAI and various parties, including Johnson Shino, Albert Yonan and Laylah Yonan (the Shino parties), on April 23, 1997, with respect to numerous lawsuits involving Subway franchise agreements either brought by or against DAI in the state and federal courts of Illinois and Connecticut. Incorporated into the Agreement is a "Mutual General Release" (the Release), upon which Duree places his sole reliance. In pertinent part, the Release states that DAI and Subway "release, remiss and forever discharge" the Shino parties and certain parties on their behalf including "all of their *** attorneys *** from any liability for any *** obligations and judgments of any kind or nature whatsoever at law or in equity, whether known or unknown *** and specifically, without limiting the generality of the foregoing, all claims of any kind whatsoever which were brought or could have been brought in that certain action in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, entitled Julie Shino, Albert Yonan Jr., Johnson Shino, Albert Yonan and Laylah Yonan, Plaintiffs v. Doctor's Associates Inc., et al.; Defendants, Docket No. 93 L 1293."

Duree maintains, without any support in the record, that he was counsel for the Shino parties and that, pursuant to the express language of the Release, he has been relieved of "any *** obligations and judgments of any kind or nature whatsoever at law or in equity" secured by DAI against him as the Shino parties' attorney. Duree claims the foregoing language is broad enough to encompass the Kansas decree and contends he has, therefore, been released of his obligations thereunder. We disagree.

First and foremost, other than Duree's bald assertion, the record is completely silent as to whether Duree ever served as counsel on behalf of the Shino parties. Further, the Agreement completely dispels Duree's intimation that he is a third-party beneficiary of the parties'

accord. The express language of the Agreement provides that none of its covenants are "intended to benefit anyone not a party [thereunder] *** except as is expressly set forth ***, and no action may be brought against any of the parties *** on a third party beneficiary theory."

■ Notwithstanding the foregoing, we conclude the Agreement was not certainly drafted with the intention of releasing Duree from the Kansas judgment. A release is a contract and, as such, is subject to the traditional rules of contract interpretation. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991). The intention of the parties, thus, controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838, 648 N.E.2d 317, 321 (1995); *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 622, 609 N.E.2d 842, 848 (1993).

■ A release will not be construed to include claims not within the contemplation of the parties. *Carlile*, 271 Ill. App. 3d at 838, 648 N.E.2d at 321. " '[N]o form of words, no matter how all encompassing, will foreclose scrutiny of a release *** or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties.' " *Carlile*, 271 Ill. App. 3d at 839, 648 N.E.2d at 321, quoting *Ainsworth Corp. v. Cenco, Inc.*, 107 Ill. App. 3d 435, 439 (1982). A release that is clear and explicit will be enforced as written (*Cruz v. Illinois Masonic Medical Center*, 271 Ill. App. 3d 383, 391, 648 N.E.2d 932, 939 (1995)) and, where no such ambiguity exists, the construction of the release is a matter of law. *Farm Credit*, 144 Ill. 2d at 447, 581 N.E.2d at 667.

■ We find the intended scope of the Agreement clear and unambiguous. The Agreement, which postdates Judge Russell's July 1996 order by more than eight months, covers litigation wholly unrelated to the Kansas proceedings instituted by DAI against Duree; indeed, no provision of the Agreement references the Kansas action. The Agreement, rather, explicitly represents the desire of DAI and the Shino parties "to resolve all matters in controversy between *them* and to settle all of *their* differences, to avoid any further litigation and to provide for the peaceful settlement of all claims by and against *one another*." (Emphasis added.) These matters in controversy are specifically listed and clearly were the only causes sought to be covered by the parties' accord. See *Carlile*, 271 Ill. App. 3d at 839, 648 N.E.2d at 321 ("[w]here there are words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made"). Further, nothing in the

record suggests the Shino parties even were aware of DAI's judgment secured against Duree. We reject Duree's overly broad and strained reading of the Release and find the Agreement ineffective to defeat the enforcement of the Kansas decree.[4]

## IV

●17 Duree further contends he was denied due process of law in the Kansas proceeding as a result of Judge Russell's alleged bias against him, Judge Sheppard's refusal to consider his postjudgment motion and the Kansas Supreme Court decision. While lack of due process may be asserted to render a foreign judgment void (see *Meyer*, 285 Ill. App. 3d at 335, 674 N.E.2d at 499 (noting lack of due process may constitute a valid ground for the vacation of a foreign judgment); see also *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 296, 628 N.E.2d 741, 744 (1993) (defining a "void judgment" as one in which the rendering court, *inter alia*, "acted in a manner inconsistent with due process of law")), Duree is precluded by *res judicata* from seeking vacation of the Kansas decree on this ground. A primary aim of the full faith and credit clause is to avoid the relitigation in other states of issues adjudicated to final resolution. *Finley v. Kesling*, 105 Ill. App. 3d 1, 6, 433 N.E.2d 1112, 1117 (1982). Duree unsuccessfully argued to the Kansas Supreme Court that Judge Russell's *ex parte* conversation amounted to a denial of his due process rights. The Kansas Supreme Court found sufficient assurances in the evidentiary record that Judge Russell decided the case in a fair and impartial manner and we must honor that determination here.

Moreover, the record does not support Duree's claim that Judge Sheppard deliberately refused to consider the matters raised in the postjudgment proceeding. As the appellant, Duree was obligated to provide a complete record containing all matters relevant to the issues he raises on appeal, and any doubt from an incomplete record will be resolved against him. *In re Estate of Jacobs*, 189 Ill. App. 3d 625, 629, 545 N.E.2d 502, 504 (1989). The record is completely devoid of any indication as to how Judge Sheppard handled Duree's postjudgment motion and we must presume that Judge Sheppard acted properly. In any event, *res judicata* precludes consideration of this issue since it could have been raised by Duree in his appeal to the Kansas Supreme Court. See *Massie*, 307 Ill. App. 3d at 120, 716 N.E.2d at 862 (noting that collateral attack on foreign judgment cannot be maintained on grounds that could have been raised in the foreign proceedings).

---

[4]Nothing in the record indicates that Duree has taken the necessary steps in Kansas to perfect his release of Judge Russell's order pursuant to the terms of the Agreement.

We similarly reject Duree's contention that his due process rights were infringed upon by the Kansas high court because the court lacked a "command of the facts." In essence, Duree seeks an independent review of the findings and rulings made by the Kansas court. Undoubtedly, we are barred by the full faith and credit clause from engaging in such a review and, accordingly, decline Duree's invitation to do so.

## V

■ Duree lastly maintains he is entitled to relief from the Kansas judgment pursuant to section 2—1401 of the Code. The crux of Duree's section 2—1401 petition is a decision of the Missouri State Board of Accountancy (the Board) issued after the Kansas proceedings had come to a final resolution. The Board's decision originated from charges it had filed against Seiffert in connection with his preparation of the amended tax return submitted in support of the Kessler/Banks counterclaim. The Board's charges specifically alleged that Seiffert violated certain professional rules and regulations by (1) ignoring the WISRs and utilizing bank deposit slips to calculate the Subway store's gross sales or receipts and (2) attaching a false or misleading disclaimer to the amended tax return. After an investigation revealed no professional violations on the part of Seiffert, the Board closed its case.

Duree argues the Kansas judgment, which was based on the finding that he manufactured the amended tax return to support the counterclaim, would not have been entered if Judge Russell had been aware of the Board's decision. Duree correctly notes that the purpose of a section 2—1401 petition is to alert the circuit court of facts not appearing of record which, if known at the time judgment was entered, would have prevented the judgment's rendition. *Cartwright v. Goodyear Tire & Rubber Co.*, 279 Ill. App. 3d 874, 882, 665 N.E.2d 365, 371 (1996).[5] Yet, Judge Russell's decision did not rest solely upon the finding that the amended tax return had been deliberately falsified. Duree overlooks the Kansas Supreme Court's opinion in which it discusses grounds other than the falsified return that supported the determina-

---

[5]We recognize the split in the courts as to whether a petition for section 2—1401 relief may be predicated on events, like here, that occurred subsequent to the judgment. Compare *Hopkins v. Holt*, 194 Ill. App. 3d 788, 551 N.E.2d 400 (1990) (finding petition may be based on events that rise after judgment), and *Saeed v. Bank of Ravenswood*, 101 Ill. App. 3d 20, 427 N.E.2d 858 (1981) (same), with *Chovan v. Floor Covering Associates, Inc.*, 159 Ill. App. 3d 447, 512 N.E.2d 801 (1987) (holding only events that antedate the judgment can be asserted in petition), and *Mohr v. Pridemore*, 151 Ill. App. 3d 341, 502 N.E.2d 754 (1986) (same).

tion that the counterclaim lacked a reasonable factual basis and was pursued in bad faith. Namely, the Kansas Supreme Court respectively cited the significant number of uncontroverted facts submitted by DAI in its motion for summary judgment and the tactics instituted by Duree in opposing that motion. See *Subway*, 266 Kan. at 444-45, 970 P.2d at 534-35. Judge Russell's knowledge of the Board's decision, therefore, would not have precluded her decision. Thus, even assuming Duree may rely on the subsequent decision of the Board in his petition, he is not entitled to relief under section 2—1401.

## CONCLUSION

For the foregoing reasons, the order of the circuit court refusing to vacate the Kansas judgment and giving that decree full faith and credit is affirmed.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.