THE DEPARTMENT OF CONSERVATION, Plaintiff-Appellee, v. HENRY CIPRIANI *et al.*, Defendants (Margaret Dash *et al.*, Defendants-Appellants).

First District (1st Division) No. 1—89—1928

Opinion filed August 6, 1990.—Rehearing denied September 26, 1990.—Modified opinion filed October 9, 1990.

William M. Doty, Jr., James R. Platt, and William J. Harte, all of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield, and Earl L. Neal & Associates, of Chicago (Terrance Lee Diamond, Special Assistant Attorney General, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401), Margaret Dash, Mary Lou Doyle, and First Bank of Oak Park (defendants) sought relief from a judgment entered in the circuit court of Cook County in an eminent domain action. The section 2—1401 petition was denied and defendants appeal.

On April 19, 1982, the Department of Conservation (the Department) filed suit to acquire by eminent domain defendants' property, which is located one block north of 31st Street on the west side of Wolf Road in the City of Westchester. The jury trial commenced on September 9, 1986. The Department argued that defendants' property value was reduced and the cost of any use would be prohibitive since the property was identified by the Federal Emergency Management Agency (FEMA)[1] as an "Area of Special Flood Hazard"[2] in a 1979 "Flood Insurance Study" (FIS), which generated the "Flood Insurance Rate Map"[3] and "Flood Hazard Boundary Map."[4] The 1979 FIS was based upon a study completed by the U.S. Soil Conservation Service (SCS) in 1977. It is uncontested that the 1979 FIS findings were published in the Federal Register and became effective in 1980.

At trial, the Department's witnesses relied on the 1979 FIS in forming their opinions regarding the defendants' property's use and value. The Department's witnesses all stated that according to the 1979 FIS, the defendants' property was in the flood plain and that, therefore, no one could build on the land. Also at trial, defendants' expert engineer, R.W. Lindley, testified that FEMA's flood insurance and flood boundary maps were "an exaggeration." On cross-examination, Lindley testified that he thought the FEMA flood maps were

---

[1]Pursuant to the National Flood Insurance and Flood Disaster Protection Acts of 1973, the Federal Emergency Management Agency (FEMA) is required to conduct flood insurance studies and to develop flood risk data for flood insurance premium and flood plain management purposes. 42 U.S.C. §4101 *et seq.* (1982).

[2]" 'Area of Special Flood Hazard' is the land in the flood plain within a community subject to a one percent or greater chance of flooding in any given year." 44 C.F.R. §§60.8, 59.1 (1989).

[3]" 'Flood Insurance Rate Map' (FIRM) means an official map of a community on which the [Federal Insurance] Administrator has delineated both the special hazard areas and the risk premium zones applicable to the community." 44 C.F.R. §§60.8, 59.1 (1989).

[4]" 'Flood Hazard Boundary Map' (FHBM) means an official map of a community, issued by the [Federal Insurance] Administrator, where the boundaries of the flood *** related *** areas having special hazards have been designated ***." 44 C.F.R. §§60.8, 59.1 (1989).

"wrong." Additionally, defendants' attorney argued that FEMA's flood maps were wrong. On September 15, 1986, the jury returned its verdict and judgment was entered awarding the defendants $62,750 for their property, rather than the significantly higher amount sought by the defendants.

On July 11, 1988, FEMA issued a "Letter of Map Revision" (the LOMR), which is the basis of defendants' section 2—1401 petition. The July 11, 1988, LOMR responded to Mr. Lindley's letter dated April 30, 1988, wherein Mr. Lindley requested that FEMA determine whether the area northwest of the intersection of 31st Street and Wolf Road lies within the special flood hazard area. Mr. Lindley provided data to support his request that included information on the watershed conditions that existed in 1977 when the SCS study was completed. The July 11, 1988, LOMR states that "between 1970 and 1982, the Sexton Landfill, which covered 0.44 square mile of the watershed, was in operation. Drainage from the landfill area *** did not contribute to the floodflows. *** The drainage area used in the SCS study did not exclude runoff from the landfill." Therefore, FEMA admits in the July 11, 1988, LOMR, that "the resulting 100-year peak discharges, the base flood elevations and floodway used in the FIS for Westchester did not reflect the conditions that existed at the time of the study."

On September 14, 1988, defendants filed their section 2—1401 petition to set aside the trial court's judgment, arguing that the 1979 FIS was extensively relied upon at trial, was wrong, and had been subsequently revised by FEMA in the 1988 LOMR. Defendants contended that the 1988 FEMA findings are of the land as it existed at the time of the trial in 1982, and, therefore, the 1988 LOMR constituted newly discovered evidence because defendants' property should have been excluded from the flood plain in the 1979 FIS. Accordingly, defendants contended that their property should have been valued higher than the amount awarded by the trial court. Lindley's affidavit accompanied the section 2—1402 petition wherein he states that the LOMR "indicates that the [FIS] did not reflect the conditions that existed at the time it was originally made," and the 1988 LOMR "demonstrates that the [FIS] was erroneous when made, and continued to be erroneous until revised July 11, 1988."

On March 8, 1989, FEMA responded to a letter dated October 15, 1988, from Ms. Valerie Spalem, executive director, Save the Prairie Society, wherein she appealed the 1988 LOMR for the Village of Westchester. In FEMA's 1989 letter, FEMA states that

"[w]e have reviewed the materials submitted by [Save the Prairie Society] and have determined that they do not contain sufficient quantitative data to warrant reconsideration of the revised base flood elevations that were established in our LOMR." FEMA attached an addendum to its 1989 letter which summarized a review of its studies. The addendum included the statement that "[t]he information provided our LOMR \*\*\* is intended to reflect current conditions in the watershed. As watershed conditions change in the future, the data can be submitted for our review and the FIS further revised as necessary."

On June 15, 1989, the trial court summarily denied defendants' section 2—1401 petition for a new trial without making any findings. Defendants appeal.

■ Defendants argue that the court abused its discretion by summarily dismissing their well-pled section 2—1401 petition. We agree. Section 2—1401 of the Code of Civil Procedure provides a simple petition process affording parties, when appropriate, "[r]elief from final orders and judgments, after 30 days from the entry thereof." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) The section 2—1401 petition is addressed to the equitable powers of the trial court (*People v. Alfano* (1981), 95 Ill. App. 3d 1026, 1029-30, 420 N.E.2d 1114) and allows a party to bring before the court matters unknown to both the parties and the court at the time of judgment which would have precluded its entry. (*Goncaves v. Saab* (1989), 184 Ill. App. 3d 952, 956, 538 N.E.2d 142, 144, citing *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 449 N.E.2d 560.) As the Department correctly noted, courts have long held that a section 2—1401 petition is not to be used as a device to relitigate issues already decided, or to put in issue matters which have previously been or could have been adjudicated since there is a strong judicial policy favoring the finality and stability of judgments. (*Malek v. Lederle Laboratories* (1987), 152 Ill. App. 3d 493, 497, 504 N.E.2d 893, 895, citing *Union National Bank & Trust Co. v. Green* (1979), 80 Ill. App. 3d 32, 34-35, 399 N.E.2d 313.) While section 2—1401 was never intended to give a party a new opportunity to do that which should have been done at an earlier proceeding, it was developed to provide trial courts with equitable powers necessary to grant relief and prevent injustice. *Malek v. Lederle Laboratories* (1987), 152 Ill. App. 3d 493, 497, 504 N.E.2d 893, 895.

■ We find that the trial court abused its discretion in summarily dismissing the section 2—1401 petition since the defendants properly alleged: (1) the existence of a meritorious claim or defense;

(2) due diligence in presenting that claim or defense in the original action; (3) due diligence in presenting the section 2—1401 petition; and (4) misapprehension of the circuit court with regard to the facts at the time the challenged order or judgment was entered. *Gayton v. Levi* (1986), 146 Ill. App. 3d 142, 148, 496 N.E.2d 1045.

■ First, the defendants have sufficiently pled the existence of a meritorious defense to the original action by alleging that the 1988 LOMR constitutes new evidence which would have affected their property's valuation at the time of trial in 1982 by demonstrating that their property was improperly included in the flood plain. We do not find the Department's contention that FEMA's 1989 letter indicates that the 1988 LOMR only reflects the land's current conditions, rather than those in 1982, persuasive because of explicit statements to the contrary in the 1988 LOMR. The July 11, 1988, LOMR clearly states that the 1979 FIS was revised because the 1979 FIS relied upon the erroneous 1977 SCS study, which did not accurately reflect the then-current conditions. Additionally, after reviewing FEMA's statement in context of the 1989 letter, we do not find the Department's contention persuasive because the 1989 letter merely responded to Save the Prairie's appeal to amend the 1988 LOMR, rejected the data which was submitted therewith, and indicated its willingness to consider evidence of changed conditions in the future. Therefore, we find that the 1988 LOMR constitutes new evidence because it indicates that the 1979 FIS was wrong on the grounds that the 1979 FIS was based upon the erroneous 1977 SCS study, and improperly included defendants' property in the flood plain.

Relying on *Russell v. Klein* (1974), 58 Ill. 2d 220, 317 N.E.2d 556, the Department contends that the 1988 LOMR cannot constitute "new evidence" because the 1988 LOMR clearly arose subsequent to the entry of judgment and that section 2—1401 relief is only available to matters which antedate the judgment. However, reviewing courts have considered facts occurring subsequent to a judgment and have distinguished *Russell.* (*Hopkins v. Holt* (1990), 194 Ill. App. 3d 788, 796, 551 N.E.2d 400; *Saeed v. Bank of Ravenswood* (1981), 101 Ill. App. 3d 20, 26, 427 N.E.2d 858, 861-63.) Specifically, the *Saeed* court held that the *Russell* statement, that section 72 (now section 2—1401) relief based on subsequent matters was unavailable, had been taken out of context and only meant that the common law writ was encompassed by section 72 to the extent that the relief sought pertained to matters in existence before the judgment so that the two-year limitation did not apply to

matters arising subsequent to judgment. (*Saeed*, 101 Ill. App. 3d at 26.) Accordingly, for the reasons set forth above, the 1988 LOMR constitutes new evidence. Moreover, the trier of fact undoubtedly found the 1979 FIS reliable and credible since the study was executed pursuant to Federal statute, 42 U.S.C. section 4101 *et seq.* (1982), by a Federal agency, and published in the Federal Register. Even if the defendants could have introduced evidence that explained why the 1979 FIS was wrong and that the defendants' property had a much greater value than if the property had been in the flood plain, a rational trier of fact surely would have given the 1979 FIS great weight because a Federal agency had made the findings and published them in the Federal Register. The trier of fact, at a new trial, should ultimately determine what impact the 1988 LOMR had on the valuation of the defendants' property in 1982.

■ Second, the defendants have sufficiently pled that the failure to discover and present evidence that the 1979 FIS incorrectly portrayed defendants' property in the original action was not the result of defendants' lack of diligence, by alleging that the 1988 LOMR was not discoverable until FEMA reconsidered the original flood plain determination in 1988. The Department, however, contends that the defendants did not diligently convey information concerning the erroneous flood plain determination to FEMA since at trial Lindley merely testified that in his opinion the 1979 FIS was an "exaggeration" and was "wrong." We find that the trier of fact should determine whether the defendants acted diligently. Specifically, the trier of fact should determine whether the defendants acted reasonably diligently in discovering that the 1979 FIS was wrong and in disseminating that information. Additionally, the trier of fact, who would consider the time and bureaucratic constraints that are necessary to any change in a Federal agency's position, should determine whether the defendants acted reasonably diligently in trying to change FEMA's position concerning the flood plain. Even if the defendants had been somewhat lax by not discovering and asserting a detailed analysis explaining why their expert opined that the 1979 FIS was wrong, the requirement of diligence should not be rigidly enforced when justice and equity are served. (See *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 228-29, 499 N.E.2d 1381.) Assuming the accuracy of the 1988 LOMR, which is to be determined by the trier of fact, the trial below was fundamentally unfair since the Department presented and relied, albeit unknowingly, on erroneous Federal findings that defendants' property

was in the flood plain. (See *Goncaves v. Saab* (1989), 184 Ill. App. 3d 952, 538 N.E.2d 142, 145-46.) Again, assuming the accuracy of the 1988 LOMR, the trial below was fundamentally unfair even if the defendants had presented evidence at trial and to FEMA that the 1979 FEMA findings were wrong because the trier of fact would nevertheless be unduly influenced by the weight of the incorrect 1979 FEMA findings.

Third, defendants acted diligently in presenting their section 2—1401 petition because their section 2—1401 petition was filed soon after discovering the 1988 LOMR and within two years of the final judgment in the trial below.

■■ Finally, the defendants have sufficiently pled that the circuit court misapprehended that their land was in the flood plain at the time the judgment was entered by alleging that the trial court heard substantial evidence that defendants' property was in the flood plain, which was based on the 1979 FIS, and that the 1988 LOMR states that the 1979 FIS was erroneous, did not reflect the then current conditions, and improperly included defendants' property in the flood plain.

■■ In conclusion, the trial court erred in summarily dismissing the defendants' section 2—1401 petition because the 1988 LOMR constituted new evidence of the type required pursuant to section 2—1401. The trial court must specifically resolve the following questions of fact: (1) whether the defendants acted reasonably diligently in discovering that the 1979 FIS was wrong; and (2) whether the defendants acted reasonably diligently in trying to change FEMA's position concerning the flood plain. If those questions of fact are answered affirmatively, then the defendants are entitled to a new trial based upon the general principles of equity that underlie section 2—1401.

Reversed and remanded.

BUCKLEY, P.J., and CAMPBELL, J., concur.