# Illinois Official Reports

## Appellate Court

---

### *Price v. Philip Morris, Inc.*, 2014 IL App (5th) 130017

---

| | |
|---|---|
| Appellate Court Caption | SHARON PRICE and MICHAEL FRUTH, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. PHILIP MORRIS, INCORPORATED, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-13-0017 |
| Filed | April 29, 2014 |

| | |
|---|---|
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant cigarette company's use of the terms "light" and "low tar" in advertising its cigarettes was fraudulent, the initial judgment for plaintiffs was reversed by the Illinois Supreme Court and remanded to the trial court with directions to dismiss the complaint, but plaintiffs later filed a petition under section 2-1401 of the Code of Civil Procedure for relief from the judgment based on allegations that the federal regulations never authorized defendant's use of the challenged terms, and although the trial court found that plaintiffs had a meritorious claim and acted with due diligence, it denied plaintiffs' petition based on the determination that it was "equally likely" that the initial judgment for plaintiffs would have been reversed by the supreme court on the damages issue; the appellate court, however, reversed the trial court on the ground that it exceeded the scope of section 2-1401 review when it attempted to predict how the supreme court would rule on the question of damages, and under the circumstances, granting plaintiffs relief from the judgment had the effect of reinstating the proceedings with the initial verdict intact. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 00-L-112; the Hon. Dennis R. Ruth, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | George A. Zelcs, Maximilian C. Gibbons, and Matthew C. Davies, all of Korein Tillery LLC, and Joseph A. Power, Jr., of Power Rogers & Smith, P.C., both of Chicago, Stephen M. Tillery and Robert L. King, both of Korein Tillery LLC, of St. Louis, Missouri, Nina Hunter Fields, of Richardson, Patrick, Westbrook & Brickman, LLC, of Mt. Pleasant, South Carolina, and Michael J. Brickman, of Richardson, Patrick, Westbrook & Brickman, LLC, of Charleston, South Carolina, for appellants. |
| | George C. Lombardi, of Winston & Strawn LLP, Michelle Odorizzi, of Mayer Brown LLP, and Kevin M. Forde, of Kevin M. Forde Ltd., all of Chicago, and Larry Hepler, of HeplerBroom, LLC, of Edwardsville, for appellee. |
| Panel | JUSTICE CHAPMAN delivered the judgment of the court, with opinion. Justices Stewart and Schwarm [1] concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiffs appeal an order denying their petition for relief from judgment (735 ILCS 5/2-1401 (West 2006)). The petition was filed under an unusual set of procedural circumstances. The plaintiffs filed a lawsuit alleging that the defendant's use of the terms "light" and "low tar" in advertising its cigarettes constituted fraud. The plaintiffs prevailed at trial; however, the judgment was reversed on appeal on the basis of a statutory provision barring consumer fraud actions where the challenged conduct was specifically authorized by federal regulations (see 815 ILCS 505/10b(1) (West 2000)). *Price v. Philip Morris, Inc.*, No. 5-09-0089 (Feb. 24, 2011) (unpublished order under Supreme Court Rule 23). The matter was remanded to the trial court with directions to dismiss the complaint. The plaintiffs subsequently filed a section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)) petition for relief from judgment, alleging that (1) evidence unavailable to the plaintiffs

    [1] Justice Wexstten was originally assigned to participate in this case. Justice Schwarm was substituted on the panel subsequent to Justice Wexstten's retirement and has read the briefs and listened to the tape of oral argument.

at trial showed that the Federal Trade Commission never authorized use of the terms "light" and "low tar" by the defendant, and (2) had the plaintiffs been able to present this evidence at trial, the result on appeal would have been different. In ruling on the petition, the trial court found that the plaintiffs (1) had a meritorious claim, and (2) acted with due diligence both in attempting to present that claim at trial and in filing the section 2-1401 petition as soon as possible. However, the court further determined that it was "equally likely" that the supreme court would have reversed on other grounds had it ruled differently on the question of section 10b(1). In this appeal, the plaintiffs argue that the court impermissibly exceeded the scope of section 2-1401 review but ruled correctly on all other issues. We reverse.

¶ 2    The plaintiffs, Sharon Price and Michael Fruth, filed a class action law suit alleging that the defendant, Philip Morris, Inc., violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 to 12 (West 2000)) by advertising its cigarettes as "light" or "low tar." The defendant raised 27 affirmative defenses, including an exclusion found in section 10b(1) of the Consumer Fraud Act. That statute provides that the Consumer Fraud Act is inapplicable to claims involving conduct that has been "specifically authorized" by any federal regulatory body. 815 ILCS 505/10b(1) (West 2000).

¶ 3    The defendant argued that section 10b(1) applied in this case because the Federal Trade Commission (FTC) specifically authorized use of the terms "light" and "low tar" in consent decrees entered in enforcement actions involving other cigarette manufacturers. In particular, the defendant pointed to a 1971 consent decree entered in an enforcement action against American Brands and a 1995 consent decree involving the American Tobacco Company. Both consent decrees permitted the manufacturers to use the terms in their advertising with certain conditions and limitations. At issue in this case was whether these consent decrees could be deemed regulatory activity. The defendant presented the testimony of an expert witness who stated that cigarette manufacturers relied on consent decrees to tell them what claims they could make in their advertising. The trial court rejected the defendant's contention, finding that "no regulatory body has ever required (or even specifically approved) the use of these terms by Philip Morris."

¶ 4    On March 21, 2003, the court entered a $10.1 billion judgment in favor of the plaintiffs. On December 15, 2005, the Supreme Court of Illinois reversed that judgment, finding that section 10b(1) of the Consumer Fraud Act barred the plaintiffs' action. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 258, 848 N.E.2d 1, 46 (2005) (*Price I*). The supreme court found that Philip Morris's actions were specifically authorized by the FTC through a process of "informal regulatory activity," including the use of consent decrees. *Price I*, 219 Ill. 2d at 258, 848 N.E.2d at 46. The court thus found section 10b(1) applicable, reversed the judgment, and remanded the matter to the trial court with directions to dismiss the plaintiffs' complaint. *Price I*, 219 Ill. 2d at 274, 848 N.E.2d at 55.

¶ 5    The plaintiffs filed a petition for rehearing, which the Illinois Supreme Court denied on May 25, 2006. They then filed a petition for a writ of *certiorari* with the United States Supreme Court. On November 27, 2006, the Court denied their petition and declined to hear the appeal. The mandate of the Illinois Supreme Court issued on December 5, 2006. Pursuant to that mandate, the trial court entered an order dismissing the plaintiffs' action with prejudice on December 18, 2006.

¶ 6    A key component of our Illinois Supreme Court's holding was its finding that the FTC itself intended its consent decrees "to provide guidance to the entire cigarette industry." *Price I*, 219 Ill. 2d at 258, 848 N.E.2d at 46. Subsequently, two statements issued by the FTC cast

doubt on the factual accuracy of this finding. In June 2008, the FTC filed an *amicus* brief in an unrelated case before the United States Supreme Court. That brief indicated that the FTC never intended to authorize the use of these terms. *Altria Group, Inc. v. Good*, 555 U.S. 70, 87 (2008) (emphasizing that the federal government in its *amicus* brief "disavows any policy authorizing the use of 'light' and 'low tar' descriptors"). The Supreme Court issued its decision in *Altria Group* on December 15, 2008.

¶ 7　　　Meanwhile, on December 8, 2008, the FTC issued a rescission of guidance. In so doing, the FTC rescinded a 1966 guidance concerning representations of tar and nicotine content that cigarette manufacturers could make in advertising and cigarette packaging. Rescission of FTC Guidance Concerning the Cambridge Filter Method, 73 Fed. Reg. 74,500 (Dec. 8, 2008) (hereinafter, Rescission of FTC Guidance). The 1966 guidance "did not *require* companies to state the tar and nicotine yields of their cigarettes"; it merely "set forth the type of substantiation" that would be "adequate" to comply with FTC regulations if companies chose to make such representations. (Emphasis in original.) Rescission of FTC Guidance, 73 Fed. Reg. at 74,501. In addition, the 1966 guidance prohibited manufacturers from making "collateral representations" about any reduction in the health hazards associated with smoking. Rescission of FTC Guidance, 73 Fed. Reg. at 74,501. Most significantly for purposes of this appeal, the 1966 guidance did not address the use of descriptors such as "light" and "low tar." In the 2008 rescission of guidance, the FTC specifically clarified this point, stating that the agency "has neither defined those terms, nor provided guidance or authorization as to the use of descriptors." Rescission of FTC Guidance, 73 Fed. Reg. at 74,504.

¶ 8　　　On December 18, 2008, the plaintiffs filed their petition for relief from judgment. The trial court granted the defendant's motion to dismiss, finding that the petition was not timely filed within two years of the Illinois Supreme Court's decision (see 735 ILCS 5/2-1401(c) (West 2006)). *Price v. Philip Morris, Inc.*, No. 5-09-0089, order at 4 (Feb. 24, 2011) (unpublished order under Supreme Court Rule 23) (*Price II*). This court reversed that ruling, finding that the statutory time limit began to run when the trial court dismissed the plaintiffs' law suit. *Price II*, No. 5-09-0089, order at 10. We remanded the matter to the trial court for further proceedings so the court could consider the merits of the plaintiffs' petition. *Price II*, No. 5-09-0089, order at 11.

¶ 9　　　On remand, the plaintiffs filed an amended petition for relief from judgment. They alleged that during the original trial in this matter, they were unable to present evidence of the FTC's stated position with respect to the use of descriptors such as "light" and "low tar." The plaintiffs further alleged that, had they been able to present this evidence, the supreme court most likely would have ruled differently on the defendant's section 10b(1) defense.

¶ 10　　After considering the documentary evidence and arguments presented by both parties, the trial court entered a detailed written order in which it made the following findings: First, the court found that the plaintiffs were diligent in their efforts to present their claim at trial, including evidence of the FTC's position regarding use of the terms "light" and "low tar." In reaching this conclusion, the court emphasized that (1) FTC commissioners declined the plaintiffs' request to file an *amicus* brief, and (2) the plaintiffs could not legally compel FTC testimony in this state court litigation (see *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). The court then noted that the defendant did not contend that the plaintiffs failed to exercise due diligence in filing their section 2-1401 petition as early as possible.

¶ 11　　Next, the trial court found that the plaintiffs demonstrated that they had a meritorious claim in the underlying litigation. The court framed the question before it as "whether it is more

- 4 -

probably true than not that, had the FTC position been presented in the record on appeal, the Illinois Supreme Court would not have ruled in Defendant's favor on its affirmative defense that Plaintiffs' claim was exempt pursuant to Section 10b(1) of the Consumer Fraud Act." In answering this question in the affirmative, the court noted that the defendant acknowledged in a motion raising the section 10b(1) defense that resolution of this question " 'revolves around a single fact: whether the matters about which plaintiffs complain *** are subject to federal regulation and control.' " The court then found that "The FTC in its brief in *Altria Group* answered that factual question [by] stating [that] it neither required nor authorized" the defendant's use of the "light" and "low tar" descriptors.

¶ 12    Finally, the trial court considered whether a different ruling on the question of the section 10b(1) exemption would have been outcome-determinative before the Illinois Supreme Court. This inquiry was based on the fact that the supreme court declined to consider other issues raised by the defendant in its initial appeal. See *Price I*, 219 Ill. 2d at 271, 848 N.E.2d at 53. In *dicta* in the opinion of the court, Justice Garman expressed "grave reservations" about two of those issues–the propriety of class certification and the calculation of damages. *Price I*, 219 Ill. 2d at 271, 848 N.E.2d at 53. In a special concurrence, Justice Karmeier, joined by Justice Fitzgerald, concluded that the plaintiffs' consumer fraud claim failed because the "plaintiffs failed to establish that they sustained actual damages." *Price I*, 219 Ill. 2d at 275, 848 N.E.2d at 55 (Karmeier, J., specially concurring, joined by Fitzgerald, J.). Justices Kilbride and Freeman each filed dissents in which they rejected both of these grounds for reversal. *Price I*, 219 Ill. 2d at 285-328, 848 N.E.2d at 60-84 (Freeman, J., dissenting, joined by Kilbride, J.); *Price I*, 219 Ill. 2d at 328-37, 848 N.E.2d at 84-89 (Kilbride, J., dissenting, joined by Freeman, J.).

¶ 13    In ruling on the petition for relief from judgment, the trial court pointed to these statements and opined that it was "*equally as likely* that the Illinois Supreme Court would find for Defendant on the damages issue." (Emphasis in original.) The trial court reiterated that the plaintiffs had the burden of proving that "it is more probably true that they would prevail," and explained that they failed to meet this burden in the face of the court's finding that it was equally likely that the defendant would have prevailed had the supreme court ruled differently on the section 10b(1) exemption. The trial court thus denied the plaintiffs' section 2-1401 petition. This appeal followed.

¶ 14    A petition for relief from judgment allows a party to bring to the attention of the trial court factual matters that would have prevented the court from entering the judgment had those matters been presented to the court prior to entry of the judgment. *Juszczyk v. Flores*, 334 Ill. App. 3d 122, 126, 777 N.E.2d 454, 458 (2002). Although a section 2-1401 petition is generally not an appropriate avenue for a litigant to seek relief from errors of law (*Klose v. Mende*, 378 Ill. App. 3d 942, 951, 882 N.E.2d 703, 712 (2008)), the statute does not expressly preclude such relief (*People v. Lawton*, 212 Ill. 2d 285, 297, 818 N.E.2d 326, 334 (2004)).

¶ 15    To prevail, the petitioner must demonstrate by a preponderance of the evidence that (1) a meritorious claim or defense exists, (2) the petitioner exercised due diligence in attempting to present that claim or defense at trial in the original litigation, and (3) the petitioner exercised due diligence in filing the petition as early as possible. *Juszczyk*, 334 Ill. App. 3d at 126-27, 777 N.E.2d at 458. Our review is *de novo* where, as here, the trial court rules on a section 2-1401 petition without an evidentiary hearing. *S.I. Securities v. Powless*, 403 Ill. App. 3d 426, 439-40, 934 N.E.2d 1, 11-12 (2010) (citing *People v. Vincent*, 226 Ill. 2d 1, 15-17 & 17 n.5, 871 N.E.2d 17, 27-28 & 28 n.5 (2007)).

¶ 16       As previously discussed, the defendant did not argue before the trial court that the plaintiffs failed to exercise due diligence in bringing their petition as early as possible. The defendant likewise does not raise this argument on appeal. Thus, we need not address this question. The defendant did argue, however, that the plaintiffs (1) did not exercise due diligence in attempting to bring their claim in the original trial in this matter, and (2) failed to demonstrate the existence of a meritorious claim. The defendant continues to raise these arguments on appeal. As we discussed earlier, the trial court ruled in the plaintiffs' favor on both of these points. On appeal, the plaintiffs argue that (1) these rulings were correct, but (2) the trial court erred in exceeding the scope of section 2-1401 review by finding that the supreme court would have reversed the judgment on other grounds. In addition, the plaintiffs argue that this court should reinstate the $10.1 billion judgment if we reverse, while the defendant contends that only the supreme court has the authority to reinstate the original judgment. We consider these arguments in turn.

¶ 17       The plaintiffs first argue that the trial court correctly found that they exercised due diligence in attempting to present their claim to the trial court in the original trial in this matter. We note that the plaintiffs actually *did* present the claim at trial. That is, they argued to the trial court that the FTC never authorized the use of the terms "light" and "low tar" in cigarette advertising by the cigarette industry as a whole or by the defendant in particular. However, they were not able to present the evidence of the FTC's stated position that it never authorized use of the terms. The plaintiffs contend that they acted diligently under the circumstances.

¶ 18       In support of its argument to the contrary, the defendant points out that the plaintiffs admitted that they did not attempt to involve the FTC in the litigation until they filed a petition for rehearing with the Illinois Supreme Court. As such, the defendant contends, the plaintiffs did not do everything reasonably possible to obtain evidence of the FTC's stated position during the original litigation in this matter. We agree with the plaintiffs.

¶ 19       There is no dispute that the plaintiffs first attempted to involve the FTC in this litigation in January 2006, after the Illinois Supreme Court reversed the decision below. At that time, they retained David Medine, a former FTC attorney. Medine stated in an affidavit that he met with FTC commissioners, who declined his request to file an *amicus* brief in this matter. According to Medine, the commissioners believed that they needed to make "a unanimous statement" regarding the FTC position on the use of the "light" and "low tar" descriptors, and they did not believe they could come to an agreement as to the precise wording of that statement before the filing deadline.

¶ 20       The defendant argues that because the plaintiffs did not take this step sooner, they did not act diligently in attempting to present the FTC's own statement of its position in the original litigation in this matter. We find this argument to be without merit. What constitutes due diligence depends on all of the particular circumstances of the case. *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 113, 920 N.E.2d 547, 558 (2009).

¶ 21       Under the facts and circumstances of this case, it defies logic to suggest that due diligence requires litigants in a state court proceeding to seek the input of a federal agency. David Medine noted in his affidavit that he approached the commissioners to request their input in the plaintiffs' petition for rehearing before the Illinois Supreme Court and/or their petition for a writ of *certiorari* to the United States Supreme Court. He stated that he attempted to persuade the commissioners that their input would help resolve the issues in a way that would be beneficial to the FTC. As noted previously, they declined Medine's request due to time constraints. It is unclear from his affidavit when he made this request. We note, however, that

Medine's argument to the commissioners would likely be far less persuasive in the context of state court proceedings than in the context of an appeal to the United States Supreme Court. This is because a definitive statement from the FTC regarding its position would have far less reach if made in a state court proceeding. We find that the trial court correctly ruled that the plaintiffs exercised due diligence under the circumstances.

¶ 22 The plaintiffs next contend that the trial court correctly found that they met their burden of demonstrating that they had a meritorious claim or defense. They contend that the supreme court would have ruled differently on the question of the section 10b(1) exemption had they been able to present evidence that the FTC itself denied ever authorizing the defendant's use of the relevant descriptors. The defendant, by contrast, argues that section 2-1401 does not provide an avenue of relief for the plaintiffs because the evidence at issue did not exist at the time of trial.

¶ 23 In response, the plaintiffs contend that, while the *evidence* at issue did not exist at the time of the original trial, the *factual matter* they needed it to prove did. That is, neither the FTC *amicus* brief filed in *Altria Group* nor the 2008 rescission of guidance had been written when this case was originally tried; however, those pieces of evidence related to a factual matter that did exist at that time–the FTC's position on the use of the descriptors "light" and "low tar" in cigarette advertising before the plaintiffs filed their complaint. The plaintiffs thus argue that the evidence at issue was properly before the court in proceedings on a petition for relief from judgment. We agree with the plaintiffs.

¶ 24 The defendant bases its argument to the contrary on *People v. Haynes*, 192 Ill. 2d 437, 737 N.E.2d 169 (2000). At issue there was a trial court's finding that a criminal defendant was fit to stand trial. The defendant's section 2-1401 petition alleged that had he been able to present additional evidence of his mental illness at his fitness hearing, the trial court would not have found him fit to stand trial and, as a result, he would not have been convicted of murder and sentenced to death. *Haynes*, 192 Ill. 2d at 461, 737 N.E.2d at 183. The additional evidence consisted of (1) the affidavit of a psychiatrist who treated the defendant in prison and diagnosed him as suffering from a mental illness that caused delusional thinking, and (2) the affidavit of a neuropharmacologist who opined that the defendant's delusional thinking could be controlled with medication at a dosage that was higher than he was receiving at the time of the fitness hearing. *Haynes*, 192 Ill. 2d at 461-62, 737 N.E.2d at 183.

¶ 25 In finding that this evidence did not provide a basis for section 2-1401 relief, the court stated that as "a *general* rule," relief is not available on the basis of matters " 'which arise subsequent' " to the challenged judgment. (Emphasis added.) *Haynes*, 192 Ill. 2d at 463, 737 N.E.2d at 183 (quoting *Russell v. Klein*, 58 Ill. 2d 220, 225, 317 N.E.2d 556, 559 (1974)). As the defendant points out, the court did note that the evidence at issue–the affidavits and proffered testimony of the two experts–"did not exist at the time of [the] defendant's fitness hearing" and, as such, "could not have been presented to the trial court" at that time. *Haynes*, 192 Ill. 2d at 463, 737 N.E.2d at 184. However, the court found it more significant that the psychiatrist "gives no opinion as to [the] defendant's fitness for trial" during the relevant time frame, and that both experts based their opinions on factors that arose after the defendant's conviction and sentencing. *Haynes*, 192 Ill. 2d at 463, 737 N.E.2d at 184. In other words, the *Haynes* defendant was not entitled to relief from judgment because he was attempting to present evidence related to facts and circumstances that developed after he was found fit to stand trial. Here, as previously discussed, the *amicus* brief in *Altria Group* and the rescission of

guidance related to a factual matter that existed prior to the original trial. We find the *Haynes* case distinguishable on this basis.

¶ 26 A far more analogous scenario occurred in *Department of Conservation v. Cipriani*, 202 Ill. App. 3d 986, 561 N.E.2d 739 (1990). There, the Department of Conservation initiated proceedings to acquire property owned by the defendants via eminent domain. *Cipriani*, 202 Ill. App. 3d at 988, 561 N.E.2d at 740. A key disputed issue in the original trial was the value of the defendants' property. *Cipriani*, 202 Ill. App. 3d at 989, 561 N.E.2d at 741. Witnesses for the Department of Conservation relied on flood maps created by the Federal Emergency Management Agency (FEMA) for a flood insurance survey. Those maps showed that the defendants' property was in a flood plain and, as such, no one could build on it. This, the witnesses opined, adversely impacted the value of the defendants' property. *Cipriani*, 202 Ill. App. 3d at 988, 561 N.E.2d at 740. The defendants offered the testimony of an expert witness who opined that the FEMA flood maps were wrong. *Cipriani*, 202 Ill. App. 3d at 988-89, 561 N.E.2d at 740. However, the jury agreed with the Department of Conservation and awarded the defendants compensation in an amount that was "significantly" lower than the amount they sought as the reasonable value of their property. *Cipriani*, 202 Ill. App. 3d at 989, 561 N.E.2d at 741.

¶ 27 Subsequently, FEMA issued a "letter of map revision." The letter explained that the flood maps and study at issue in the original eminent domain proceedings failed to exclude runoff from a nearby landfill. *Cipriani*, 202 Ill. App. 3d at 989, 561 N.E.2d at 741. As such, the letter explained, the maps and study did not accurately " 'reflect the conditions that existed at the time of the study.' " *Cipriani*, 202 Ill. App. 3d at 989, 561 N.E.2d at 741. The defendants filed a section 2-1401 petition, contending that the letter of map revision demonstrated that the evidence relied upon at trial to determine the value of their property was not accurate. *Cipriani*, 202 Ill. App. 3d at 989, 561 N.E.2d at 741. The trial court dismissed the petition without findings. *Cipriani*, 202 Ill. App. 3d at 990, 561 N.E.2d at 741.

¶ 28 On appeal, the Department of Conservation argued, much as the defendant argues here, that the letter of map revision could not provide a proper basis for section 2-1401 relief because it was issued several years after the judgment was entered. *Cipriani*, 202 Ill. App. 3d at 991, 561 N.E.2d at 742. In rejecting this argument, the *Cipriani* court noted that the rule cited by the Department was only a general rule. *Cipriani*, 202 Ill. App. 3d at 991-92, 561 N.E.2d at 742. Moreover, the court went on to explain that while the letter of map revision did not exist at the time of the original trial, it was crucial evidence related to the condition and value of the defendants' property at the relevant time. *Cipriani*, 202 Ill. App. 3d at 992, 561 N.E.2d at 742-43. Similarly, in the instant case, the *amicus* brief in *Altria Group* and the rescission of guidance related to the FTC policy concerning descriptors such as "light" and "low tar" during the relevant time period.

¶ 29 The defendant further contends that the evidence showed that the FTC changed its position. We disagree. It is true that the rescission of guidance represented a change in the FTC's policy regarding a somewhat related matter–that is, the FTC no longer endorsed a method of testing tar and nicotine yields called the "Cambridge Filter Method." Rescission of FTC Guidance, 73 Fed. Reg. at 74,503 (indicating that advertisers "should no longer use *** terms or phrases that state or imply the Commission's approval or endorsement of the Cambridge Filter method"). However, the FTC specifically declined to change its position regarding the use of descriptors such as "light" and "low tar." Rescission of FTC Guidance, 73 Fed. Reg. at 74,504. As noted previously, the FTC explicitly stated that it had never authorized

or defined those terms. Rescission of FTC Guidance, 73 Fed. Reg. at 74,504. Moreover, after declining "the invitation to initiate a proceeding that would prohibit all use of descriptors" such as those at issue in this case, the FTC went on to state that "any continued use of descriptors is subject to the FTC Act's proscription against deceptive acts and practices." Rescission of FTC Guidance, 73 Fed. Reg. at 74,504.

¶ 30 Finally, the plaintiffs argue that the court erred by exceeding the scope of section 2-1401 review. We agree.

¶ 31 In support of their position, the plaintiffs cite to *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 858 N.E.2d 1 (2006). There, the supreme court rejected an argument that the trial court erred in refusing to consider issues that were not resolved by the trial court when it rendered the original judgment. The defendant argues that *Paul* is not analogous to the instant case because it involved a dismissal for want of prosecution where the original judgment did not include any rulings on the merits. The defendant points us to *Doctor's Associates, Inc. v. Duree*, 319 Ill. App. 3d 1032, 745 N.E.2d 1270 (2001), and *People v. Haynes*, arguing that those cases are more analogous to the case before us. In both of those cases, appellate courts found denials of section 2-1401 petitions to be appropriate where the courts found that the unavailable evidence would not have changed the outcome of the original actions. We note that, due to the unique procedural history of this case, it is difficult to find cases that are precisely analogous to the matter at hand. We find both cases cited by the defendant to be distinguishable. While we do not find the *Paul* case, cited by the plaintiffs, to be precisely analogous to the case before us, we do find it relevant and instructive.

¶ 32 *Haynes*, as previously discussed, involved a petition for relief from judgment in a criminal case where the defendant alleged he was unfit to stand trial. The court held a fitness hearing, at which five different expert witnesses testified that the defendant suffered from a mental illness, as a result of which he exhibited delusional thinking. *Haynes*, 192 Ill. 2d at 463-64, 737 N.E.2d at 184. The first of those experts did not offer an opinion on the defendant's fitness to stand trial. *Haynes*, 192 Ill. 2d at 450, 737 N.E.2d at 177. The second concluded that the defendant's delusions rendered him unwilling–though not necessarily unable–to cooperate with defense counsel in his own defense. *Haynes*, 192 Ill. 2d at 450, 737 N.E.2d at 177. The third defense expert testified that he did not feel qualified to offer an opinion regarding the defendant's fitness to stand trial. *Haynes*, 192 Ill. 2d at 451, 737 N.E.2d at 177-78.

¶ 33 The defendant's fourth expert concluded that the defendant was able to understand the nature of the charges, but was unable to assist counsel in his own defense. *Haynes*, 192 Ill. 2d at 452-53, 737 N.E.2d at 178. The final defense expert likewise testified that the defendant was unable to cooperate with counsel and therefore not fit to stand trial. *Haynes*, 192 Ill. 2d at 455, 737 N.E.2d at 179. The court found the defendant fit to stand trial (*Haynes*, 192 Ill. 2d at 456, 737 N.E.2d at 180), and he was subsequently convicted of murder and sentenced to death (*Haynes*, 192 Ill. 2d at 457, 737 N.E.2d at 180-81).

¶ 34 As discussed earlier, the defendant later filed a petition for relief from judgment on the basis of two expert opinions rendered subsequent to his conviction and sentence. *Haynes*, 192 Ill. 2d at 461-62, 737 N.E.2d at 183. As we also discussed previously, the court found that this evidence was not the proper basis for a section 2-1401 petition because it related to matters that arose subsequent to the judgment. *Haynes*, 192 Ill. 2d at 463, 737 N.E.2d at 184. In *dicta*, the *Haynes* court noted that the defendant also "failed to establish that this evidence would have changed the outcome of the fitness hearing." *Haynes*, 192 Ill. 2d at 463, 737 N.E.2d at 184. The court pointed to the testimony of the five expert witnesses and explained that it was unlikely

that the testimony of an additional psychiatrist regarding his "similar findings would have altered the outcome of the proceedings." *Haynes*, 192 Ill. 2d at 464, 737 N.E.2d at 184. Contrary to the defendant's argument here, the *Haynes* court did not consider a wholly unresolved issue. As such, we find no support there for the defendant's position here.

¶ 35   The underlying litigation involved in *Duree* was a contract action filed in a Kansas state court. The plaintiff, a franchisor of Subway sandwich shops, sued two of its franchisees to recover funds owed under the franchise agreement. *Duree*, 319 Ill. App. 3d at 1036, 745 N.E.2d at 1275. The franchisees were represented by David Duree, an Illinois attorney. Duree filed several counterclaims, including a claim that the plaintiff fraudulently induced the franchisees to purchase their Subway franchise. *Duree*, 319 Ill. App. 3d at 1036, 745 N.E.2d at 1275. In support of this claim, Duree hired an accountant who prepared an amended tax return for the defendants' store. The amended return, which showed an operating loss, was based on bank records for the defendants' shop rather than the more accurate figures contained in their weekly sales reports. *Duree*, 319 Ill. App. 3d at 1036-37, 745 N.E.2d at 1275.

¶ 36   The Kansas trial court granted summary judgment in favor of the plaintiff on the counterclaim. *Duree*, 319 Ill. App. 3d at 1037, 745 N.E.2d at 1275. The plaintiff then filed a motion for sanctions against Duree, alleging that he filed the counterclaim in bad faith without any basis in fact. *Duree*, 319 Ill. App. 3d at 1037, 745 N.E.2d at 1275-76. The trial court granted that motion. In a detailed written order, the trial judge found that the amended tax return prepared by Duree's accountant "was deliberately falsified and manufactured for the sole purpose of supporting the counterclaim." *Duree*, 319 Ill. App. 3d at 1037, 745 N.E.2d at 1276. She also highlighted "numerous [additional] gaps and deficiencies" in the evidence Duree presented in support of the counterclaim. *Duree*, 319 Ill. App. 3d at 1038, 745 N.E.2d at 1277 (citing *Subway Restaurants, Inc. v. Kessler*, 970 P.2d 526, 534 (Kan. 1998)). The court further found that Duree violated Kansas court rules by denying uncontroverted facts with no basis in the record to do so and by attempting "to divert the court's attention from the true facts of the case by attempting to make the court angry at [the plaintiff] and its attorneys." *Duree*, 319 Ill. App. 3d at 1039, 745 N.E.2d at 1277 (citing *Kessler*, 970 P.2d at 535).

¶ 37   Duree appealed the order imposing sanctions. *Duree*, 319 Ill. App. 3d at 1038, 745 N.E.2d at 1276. The Kansas Supreme Court upheld that order, relying heavily on the findings of fact included in both the trial court's sanctions order and the summary judgment order. *Duree*, 319 Ill. App. 3d at 1038-39, 745 N.E.2d at 1276-77. The plaintiff then filed a petition to enroll the Kansas judgment in Illinois, which the Cook County circuit court granted over Duree's objection. *Duree*, 319 Ill. App. 3d at 1039, 745 N.E.2d at 1277. Duree filed a petition for relief from judgment. *Duree*, 319 Ill. App. 3d at 1047, 745 N.E.2d at 1283.

¶ 38   On appeal, Duree argued that he was entitled to relief from the Kansas judgment imposing sanctions pursuant to section 2-1401. In support of this contention, he relied on a decision of the Missouri State Board of Accountancy, which found that the accountant did not violate any professional rules in preparing the amended tax return at issue in the counterclaim. *Duree*, 319 Ill. App. 3d at 1047, 745 N.E.2d at 1283. Duree argued that this decision, issued after the Kansas Supreme Court affirmed the sanctions order, would have precluded the Kansas trial court from imposing sanctions because its decision "was based on the finding that he manufactured the amended tax return." *Duree*, 319 Ill. App. 3d at 1047, 745 N.E.2d at 1283.

¶ 39   The First District rejected this argument, emphasizing that the Kansas trial judge's decision "did not rest solely upon the finding that the amended tax return had been deliberately falsified." *Duree*, 319 Ill. App. 3d at 1047, 745 N.E.2d at 1283-84. The court went on to

explain that the Kansas Supreme Court opinion pointed to other grounds that supported the trial court decision before concluding that had the Missouri State Board of Accountancy decision been available to the Kansas trial judge, it "would not have precluded her decision" to impose sanctions. *Duree*, 319 Ill. App. 3d at 1048, 745 N.E.2d at 1284.

¶ 40 According to the defendant here, the *Duree* decision required the First District to decide an issue that was not decided in the Kansas litigation. In support of this contention, the defendant points to a statement in the Kansas trial court's sanctions order noting that the amended tax return was " 'at the heart of' " the motion for sanctions. See *Kessler*, 970 P.2d at 536. The defendant argues that, "Nevertheless, the First District considered the other grounds that were listed (but not relied upon) in the Kansas Supreme Court's decision." As such, the defendant claims, "the First District considered an unresolved issue–whether the other evidence was sufficient to justify the imposition of sanctions." We believe this argument mischaracterizes the decisions of both the Kansas Supreme Court and the First District.

¶ 41 We first note that nowhere in either of these opinions does either court state that the amended tax return was the sole basis supporting the imposition of sanctions. As previously discussed, the Kansas Supreme Court relied heavily on the extensive findings of fact contained in the trial court's orders granting summary judgment and imposing sanctions. In finding that Duree had filed the counterclaim with no basis in fact, the Kansas Supreme Court pointed to the trial court's finding that after five years of discovery, the franchisees were unable to present any evidence supporting their claim that they were fraudulently induced to purchase the Subway shop. They provided no evidence that any of the allegedly false statements made by the plaintiff's representations were, in fact, false. *Kessler*, 970 P.2d at 534.

¶ 42 In finding that Duree filed the counterclaim in bad faith, the Kansas Supreme Court noted that Duree denied nearly all of the numerous factual allegations in the plaintiff's summary judgment motion despite the complete lack of any evidence in the voluminous record that contradicted those allegations. In doing so, the court explained, Duree violated court rules. *Kessler*, 970 P.2d at 535.

¶ 43 The court did find the amended tax return significant. As the court explained, the fact that Duree hired an accountant to file the return was powerful evidence that he knew the counterclaim was baseless. *Kessler*, 970 P.2d at 535. However, as discussed, it was one of numerous items that supported the trial judge's findings, not the sole basis. We are thus not persuaded by the defendant's contention that the First District resolved an "undecided question" in concluding that section 2-1401 relief was not appropriate.

¶ 44 As the foregoing discussion demonstrates, both the *dicta* in *Haynes* and the decision in *Duree* focused on whether the evidence would have determined the outcome of issues that were actually decided–the *Haynes* defendant's fitness to stand trial and the propriety of sanctions in *Duree*. Here, by contrast, the court explicitly found that the plaintiffs had a meritorious claim in that the supreme court would have ruled differently on the defendant's affirmative defense had the plaintiffs been able to present evidence of the FTC's own stated position at trial. It follows from this that, as such, the supreme court would not have directed the trial court to enter an order dismissing the plaintiffs' complaint pursuant to section 10b(1), which is the judgment at issue in these proceedings. For this reason, we find no support for the defendant's position in either *Haynes* or *Duree*.

¶ 45 We next consider *Paul*, the case cited by the plaintiffs. There, the plaintiff was a trustee for the retirement plans of her medical practice. In her capacity as trustee, she filed two lawsuits against various defendants, alleging fraud, negligence, breach of contract, and breach of

fiduciary duty. *Paul*, 223 Ill. 2d at 89-90, 858 N.E.2d at 4. While the cases were pending, she filed for bankruptcy. *Paul*, 223 Ill. 2d at 90, 858 N.E.2d at 4. The trial court therefore stayed both cases pending the outcome of the bankruptcy proceedings. Three years later, the court held a status hearing on the two suits. Because the plaintiff did not appear, the court dismissed both suits for want of prosecution. *Paul*, 223 Ill. 2d at 91, 858 N.E.2d at 5.

¶ 46    Fifteen months later, the bankruptcy court entered an order finding that the claims in both cases were " 'properly claimed as exempt' " and thus were abandoned back to the plaintiff from the bankruptcy estate. *Paul*, 223 Ill. 2d at 91, 858 N.E.2d at 5. Six months after that, the plaintiff filed petitions for relief from the judgments dismissing her suits for want of prosecution. *Paul*, 223 Ill. 2d at 91, 858 N.E.2d at 5. She alleged that the bankruptcy trustee did not allow her to pursue the claims on her own and also refused to pursue them on behalf of the bankruptcy estate. *Paul*, 223 Ill. 2d at 92, 858 N.E.2d at 5. Some of the defendants argued that the plaintiff did not establish the existence of a meritorious claim because she did not suffer damages, she lacked standing, and her claims were preempted by federal law. *Paul*, 223 Ill. 2d at 93, 858 N.E.2d at 6. The trial court rejected these arguments and granted the plaintiff's petitions. *Paul*, 223 Ill. 2d at 93-94, 858 N.E.2d at 6.

¶ 47    On appeal, the defendants once again argued that the plaintiff failed to establish that she had a meritorious claim based on the issues of damages, standing, and preemption. *Paul*, 223 Ill. 2d at 106-07, 858 N.E.2d at 13. In rejecting this argument, the supreme court held:

"Issues of standing, damages, preemption, and the like all concern the merits of the Adelman and Mann cases. In ruling on plaintiff's section 2-1401 petitions, however, it was not the trial court's responsibility to determine the merits of the underlying causes of action. [Citation.] The central facts which plaintiff was required to plead and prove in connection with her petitions are not those facts which would establish her entitlement to damages in the underlying actions, but those facts which would establish her entitlement to have the [dismissal for wont of prosecution] orders vacated. [Citations.]" *Paul*, 223 Ill. 2d at 107, 858 N.E.2d at 14.

¶ 48    The court further explained that "issues of federal preemption and plaintiff's ability to establish damages both devolve into fact questions more appropriate for resolution in the trial court." *Paul*, 223 Ill. 2d at 108, 858 N.E.2d at 14. This observation illustrates both the similarities and the differences between *Paul* and the case before us. In *Paul*, the plaintiff's actions were dismissed before she had an opportunity to present evidence to support her claims and before the trial court made substantive rulings on any issues. By contrast, the plaintiffs here had the opportunity to present evidence on all issues, including the question of damages, and those issues were resolved by the trial court after a full trial.

¶ 49    The fact that the plaintiffs had the opportunity to fully litigate their claims at the trial court level *does* make this case quite different from the scenario presented in *Paul* in some respects. In other respects, however, the cases are similar. Most significantly, the trial court in this case dismissed the plaintiffs' lawsuit after it was directed to do so by the supreme court in an opinion that did not reach the merits of the underlying claim, including the question of damages. As noted, the trial court decided those issues in favor of the plaintiffs. Whether that decision was correct is a question more appropriately answered by the supreme court than the trial court.

¶ 50    This is so for two reasons. First, that is the course the litigation would have taken had the supreme court not directed the court to dismiss the action pursuant to section 10b(1). Moreover, the trial court's analysis of what the supreme court would have decided had it

addressed the damage issue is, as the plaintiffs contend, inherently speculative. The defendant argues, however, that the trial court's determination of whether the FTC's explicit statements regarding its approach to descriptors would likely have changed the outcome is equally speculative. We disagree.

¶ 51 It is important to note that there is a key distinction here between the question actually decided by the supreme court and those left unresolved. The question of the applicability of section 10b(1) was decided by the supreme court in a lengthy opinion in which the court provided a detailed rationale for that decision. Therefore, we know the basis of its decision on that question. When considering the plaintiffs' section 2-1401 petition, it was thus possible for the trial court to consider how the analysis the court actually performed would likely be changed by the evidence of the FTC's own statements regarding its lack of regulation of the descriptors.

¶ 52 More specifically, in analyzing the defendant's section 10b(1) claim, the supreme court first noted that part of the defendant's argument was its contention that the "FTC itself considers [consent decrees] to be regulatory activity." *Price I*, 219 Ill. 2d at 238, 848 N.E.2d at 35. The court then explained that resolution of the question depended upon an examination of "the affirmative acts or expressions of authorization" by the FTC. *Price I*, 219 Ill. 2d at 241, 848 N.E.2d at 36.

¶ 53 In accepting the defendant's argument, the court looked to comments in various FTC documents noting that the majority of cigarette manufacturers were in compliance with the terms of a consent decree in an enforcement action that involved six manufacturers and referring to resolution of enforcement actions as part of its " 'regulatory activity.' " *Price I*, 219 Ill. 2d at 258, 848 N.E.2d at 46. In addition, the court found that the defendant's characterization of these documents was consistent with the testimony of its expert witness, who testified "that the FTC uses consent orders to provide guidance to the entire cigarette industry." *Price I*, 219 Ill. 2d at 258, 848 N.E.2d at 46.

¶ 54 The court acknowledged that the consent decrees involving other companies did not provide *express* authority for the defendant to use the relevant descriptors. *Price I*, 219 Ill. 2d at 272, 848 N.E.2d at 53. However, the court found that published orders provided *implicit* authority. *Price I*, 219 Ill. 2d at 272, 848 N.E.2d at 53-54. The court concluded that the defendant was exempt from liability under the Consumer Fraud Act because it was "specifically authorized to use the disputed terms without fear of the FTC challenging them as deceptive or unfair." *Price I*, 219 Ill. 2d at 273, 848 N.E.2d at 54.

¶ 55 It is easy to see how this analysis would have been changed by the *amicus* brief in *Altria Group* and the 2008 rescission of guidance, both of which contained *direct* statements that the FTC *never* intended to authorize use of the terms. In addition, the rescission of guidance specifically stated that, although use of the terms was not prohibited, it was subject to the requirement that it not be deceptive.

¶ 56 In contrast, the supreme court did not analyze, much less resolve, the question of whether the plaintiffs offered sufficient proof of the damages they alleged. After concluding that the case should have been dismissed pursuant to section 10b(1), the court noted, "Several of the other issues raised in this appeal are of great importance and deserving of consideration by this court in the proper case." *Price I*, 219 Ill. 2d at 268, 848 N.E.2d at 51. The court went on to discuss several reasons it questioned whether class certification was appropriate, although the court did not resolve any of these questions. *Price I*, 219 Ill. 2d at 268-71, 848 N.E.2d at 51-53. The court then noted that, in addition to these concerns, it had "grave reservations about the

novel approach to the calculation of damages that was offered by the plaintiffs and accepted by the circuit court." *Price I*, 219 Ill. 2d at 271, 848 N.E.2d at 53. This is all the court said about the issue of damages. We note that it is not clear from this statement whether the court disagreed with the calculation of the amount of damages awarded or the finding that the plaintiffs proved they sustained damages at all. See *Price I*, 219 Ill. 2d at 326, 848 N.E.2d at 83 (Freeman, J., dissenting, joined by Kilbride, J.) (discussing a possible reason "the majority of the court does not endorse the position advanced by the special concurrence"). In addition, we reiterate the fact that two justices specifically rejected the notion that the plaintiffs failed to prove damages. Thus, contrary to the defendant's assertion, the trial court's discussion of what the supreme court would have decided had it addressed those issues is inherently speculative in a way its discussion of the impact of the new information on the issue it actually did decide is not.

¶ 57    We conclude that the trial court exceeded the scope of section 2-1401 review when it attempted to predict how the supreme court would rule on the question of damages. For these reasons, the order denying the petition for relief from judgment must be reversed.

¶ 58    Lastly, we must address the parties' arguments concerning the proper disposition of this case in light of our decision to reverse the trial court's order. The defendant argues that only the supreme court has the authority to reinstate the verdict against it (see *People v. Brown*, 171 Ill. App. 3d 500, 503-04, 525 N.E.2d 1228, 1230 (1988) (explaining that an appeals court is bound by the precedents of the supreme court because "where the supreme court has declared the law on any point, it alone can overrule and modify its previous opinion")), while the plaintiffs argue that reinstating the verdict is a "common sense solution" that will return the proceedings "as close as they possibly can be [returned] to the *status quo ante*." They explain that this is so because it leaves the plaintiffs with a judgment in their favor, while leaving the defendant with the right to appeal that judgment.

¶ 59    As the plaintiffs point out, the unique procedural history of this case leaves us with little guidance in resolving this question. We find, however, that the effect of vacating the dismissal order would be to reinstate the verdict. Vacating the dismissal order has the effect of reinstating the proceedings at the stage they were at prior to entry of that order. Because the supreme court never reached the merits of the underlying claims, the only ruling it reversed was the trial court's decision to deny the defendant's motion for summary judgment on the basis of section 10b(1) of the Consumer Fraud Act. Thus, vacating the dismissal order will reinstate the proceedings with the verdict intact.

¶ 60    In its argument to the contrary, the defendant points to the language the supreme court used in reversing the judgment. The court stated, "We reverse the judgment of the circuit court and remand with instructions to dismiss pursuant to section 10b(1) of the Consumer Fraud Act." *Price I*, 219 Ill. 2d at 274, 848 N.E.2d at 55. The defendant also points to the decision in which this court considered the question of when the two-year time limit in section 2-1401 began to run. As the defendant points out, we found it significant that the supreme court chose to remand the matter to the trial court with instructions to dismiss rather than dismissing the matter outright. See *Price II*, No. 5-09-0089, order at 10 (noting that "the plaintiffs' action was not effectively dismissed until the trial court dismissed the case" (citing *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 304-05, 427 N.E.2d 563, 569 (1981))). The defendant argues that this distinction is significant here also. The defendant argues that while the trial court can grant relief from its own order dismissing the petition, it cannot grant relief from the supreme court's order reversing the judgment. The flaw in this argument is that the only ruling

the supreme court actually reversed was the trial court's ruling on the defendant's section 10b(1) defense. Although it is true that the court may well have reversed the judgment on other grounds, it would not have done so without considering the merits of those issues. We find that granting relief from judgment has the effect of reinstating the proceedings with the verdict intact.

¶ 61     For the foregoing reasons, we reverse the judgment of the trial court denying the plaintiffs' petition for relief from judgment.

¶ 62     Reversed.