2025 IL App (1st) 250210-U

FIRST DISTRICT,
SIXTH DIVISION
November 14, 2025

No. 1-25-0210

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| NORTH MILL EQUIPMENT FINANCE LLC, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | No. 2023L012340 |
| ELEMENTAL CENTER LTD and ADEOYE MARTINS, | ) ) ) | Honorable |
| Defendants-Appellees. | ) ) | Thomas More Donnelly, Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Denial of plaintiff's motion to enforce settlement agreement is affirmed. Dismissal of plaintiff's section 2-1401 petition is reversed and remanded for an evidentiary hearing where plaintiff pled facts showing a mutual mistake of fact regarding the parties' settlement and due diligence.

¶ 2    Plaintiff North Mill Equipment Finance LLC (North Mill) appeals the trial court's decisions denying North Mill's motion to enforce the settlement agreement entered with defendants Elemental Center Ltd (Elemental) and Adeoye Martins  (collectively, defendants) and dismissing its amended petition under section 2-1401 of the Code of Civil Procedure (Code) (735

ILCS 5/2-1401) (West 2024), which seeks recission of the settlement agreement. The trial court denied North Mill's motion to enforce the settlement agreement due to North Mill's lack of substantial compliance with its terms. The trial court dismissed North Mill's amended 2-1401 petition because North Mill "made a promise it could not keep," concluding because North Mill defaulted under the settlement agreement, North Mill could not rescind the agreement under section 2-1401. We affirm the denial of North Mill's motion to enforce the settlement agreement, reverse the dismissal of North Mill's amended 2-1401 petition, and remand for an evidentiary hearing on the petition.

¶ 3                                        I. BACKGROUND

¶ 4                              A. Equipment Finance Agreement

¶ 5        On February 16, 2023, non-party MMP Capital, LLC (MMP) and Elemental entered into an Equipment Finance Agreement (EFA) to finance the purchase of two pieces of medical equipment for $269,000. As the owner of Elemental, Martins entered into an Individual Guaranty Agreement (Guaranty) on the EFA. Under the EFA, Elemental was to make 60 monthly payments in the amount of $6,598.71 to MMP. The collateral under the Agreement was two pieces of equipment: an Emface Workstation S/N# 785F5FB000909 and an Emsella Workstation S/N# 09900B006796; 29930B00382 (the collateral). If Elemental defaulted, the EFA provided the following remedies to MMP:

> "(a) terminate this EFA, (b) foreclose on your security interest and require you to immediately turn over the Collateral to us at your sole expense, or we may peaceably repossess the same without liability for trespass, and upon receipt of the Collateral, sell the Collateral at terms we determine at one or more private sales, and apply the net proceeds (after deducting any related expenses) to your payment obligations, and you will remain labile for any deficiency with any excess being retained by us; (c) declare all sums due and to become due hereunder immediately due and payable, all future Payments discounted at the lower of three percent (3%) or the then-current discount rate of the Federal Reserve Bank of New York as calculated by us; (d) sell, dispose of, hold,

or lease the Collateral; (e) exercise any other right or remedy which may be available to us under applicable law."

On February 24, 2023, MMP sold and assigned its right, title, and interest in and to the EFA to plaintiff North Mill.

¶ 6 On December 6, 2023, North Mill filed a complaint against Martins and Elemental for breach of contract, breach of Guaranty, and replevin. North Mill alleged Elemental owed an outstanding amount of $352,095.85 as of October 30, 2023, and Martins failed to comply with the Guaranty by refusing to make payment of the $352,095.85 owed. Thus, North Mill sought possession of the collateral pursuant to the terms of both the EFA and Guaranty.

¶ 7 On January 25, 2024, Martins filed a *pro se* answer to North Mill's complaint and other motions, including a "Motion to Determine the Location and Status of the Collateral." The motion alleged North Mill repossessed the collateral and, therefore, Martins was requesting an "update[d] list of all [c]ollateral taken from" Elemental. On May 17, 2024, the trial court denied Martins' motion and held Elemental in default for failure to respond to the complaint. The order indicates the court would hold a UCC sale and states, "The parties agree that [North Mill] has possession of the collateral." The case was continued for a settlement conference.

¶ 8 B. Settlement Agreement

¶ 9 On May 24, 2024, North Mill and Martins entered into an oral settlement agreement in open court. Under the agreement, North Mill was to provide "an opportunity for a visual inspection [of the collateral] via video at sometime between [May 24, 2024] and June 6th at a time convenient to both parties." Martin was to make a payment of "$10,000 to be made on June 6, 2024, followed by the second payment on July 20, 2024, and on the 20th of every month thereafter," totaling $165,000, plus interest and storage fees. Once Martin completed all payments, he could pick up the collateral. A default judgment of $355,000 would be entered upon failure to make any timely

payment. The trial court dismissed the action with prejudice and retained jurisdiction to enforce the settlement agreement.

¶ 10        On June 5, 2024, North Mill emailed Martins that the first payment was due the next day. On June 6, 2024, Martins responded, acknowledging that the first payment was due, but said North Mill failed to grant access for an inspection of the collateral. North Mill gave Martins the name and number of the person he could call to schedule an inspection and offered to hold the $10,000 payment in escrow pending the inspection. Martins declined, prompting North Mill to file a motion to enforce the terms of the settlement agreement. In response, Martins filed a motion to compel North Mill to produce a visual inspection of the collateral. Shortly after these motions were filed, North Mill learned it only had possession of one piece of equipment, not both, as the parties contemplated at the time of the settlement agreement. As such, it was unable to provide Martins with a visual inspection of the complete collateral.

¶ 11        The court denied both parties' motions "for lack of substantial compliance by [each] movant with the settlement agreement." This left the parties with a dismissed lawsuit and an unenforceable settlement agreement.

¶ 12        North Mill filed an amended 2-1401 petition to vacate dismissal of the action and the oral settlement agreement on the grounds it was premised on North Mill having both pieces of equipment. North Mill alleged full performance of the settlement agreement was impossible, and the dismissal of the lawsuit should be vacated to allow discovery and further pleading of new claims based on new information. In support, North Mill's vice president Ellen Miller submitted an affidavit explaining her mistaken belief as to why she thought North Mill had both pieces of equipment at the time she authorized the settlement agreement. A cold reading of the affidavit does not indicate any malice or malfeasance by Miller and contains a reasonable explanation for the

misunderstanding. Notwithstanding, the trial court dismissed North Mill's amended 2-1401 petition, holding that because "it was the parties' agreement in chambers that [Martins] would get to see the equipment was in good shape before he made payment," North Mill's failure to provide a video inspection before June 6 was a breach. Citing *Hopkins v. Holt*, 194 Ill. App. 3d 796 (1990), the court found that North Mill "fail[ed] to properly allege a meritorious claim" because "as a defaulting party, [North Mill] cannot employ section 2-1401 to rescind the agreement and sue on the original debt."

¶ 13     The court denied North Mill's motion to reconsider. North Mill appeals.

¶ 14                                    II. ANALYSIS

¶ 15     On appeal, North Mill argues the court erred in denying its motion to enforce the settlement agreement. We disagree, as it is clear North Mill could not comply with the terms. However, we do agree with North Mill that the court erred in dismissing its amended 2-1401 petition without a hearing and, therefore, reverse and remand for further proceedings.

¶ 16                    A. North Mill's Motion to Enforce Settlement Agreement

¶ 17     When the parties entered into the settlement agreement, they and the court believed North Mill had possession of both pieces of equipment, North Mill would be able to provide an opportunity for an inspection, and upon Martins' payment of $165,000 with interest and storage charges, Martins was entitled to pick up the equipment. North Mill's possession of both pieces of equipment was a critical component of the settlement agreement, which turned out to be wrong. Enforcing the contract in favor of North Mill and against Martins would be unconscionable because he would not receive the benefit of the bargain of receiving the two pieces of equipment agreed to by the parties.

¶ 18      North Mill asserts the settlement agreement should still be enforced because it could simply substitute another piece of equipment for the missing one or Martins could seek a setoff. We disagree. North Mill is not entitled to remake the agreement to suit itself, particularly when North Mill's mistaken belief that it had possession of all collateral is what precipitated the dilemma. Accordingly, we affirm the court's denial of North Mill's motion to enforce the settlement agreement, not because North Mill was in breach of the agreement *per se*, but because it admittedly could not comply with the terms and it would be unconscionable to enforce the agreement against Martins. The futility of enforcing the oral agreement is amply supported by the record.

¶ 19                    B. North Mill's Amended 2-1401 Petition

¶ 20      We nevertheless find the trial court erred in dismissing North Mill's amended 2-1401 petition, as North Mill sufficiently pled a meritorious defense and employed due diligence in doing so. Section 2-1401 allows for relief from final orders and judgments more than 30 days but less than two years after their entry. 735 ILCS 5/2-1401 (West 2024). The purpose of a section 2-1401 petition is to bring facts to the attention to the circuit court which, if known at the time of judgment, would have prevented the judgment. *Department of Conservation v. Cipriani*, 202 Ill. App. 3d 986, 990 (1990). To be entitled to relief under section 2-1401, the petitioner must show by a preponderance of the evidence (1) the existence of a meritorious defense or claim, (2) due diligence in the original action, and (3) due diligence in filing the section 2-1401 petition. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). Traditional grounds for relief under section 2-1401 include fraud, duress, and mutual mistake of fact. *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 214 (1994).

¶ 21      Martins objected to North Mill's amended 2-1401 petition by filing a "response," wherein he challenged the facts upon which North Mill based its allegations of a meritorious defense. At

some point, the parties agreed Martins' response "should be treated as a motion to dismiss" and the court treated it as such, ultimately dismissing the amended 2-1401 petition for failure to "properly allege a meritorious claim."

¶ 22    "A motion to dismiss a section 2-1401 petition is reviewed under the same standard as any motion to dismiss a pleading." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 57. A section 2-615 motion to dismiss raises defects appearing on the face of the complaint. 735 ILCS 5/2-615 (West 2024). "Under section 2-615, the critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. All well-pleaded facts are taken as true, and a court should dismiss under section 2-615 only where no set of facts can be proven which would entitle plaintiff to recovery. *Id.* Where a material issue of fact exists, a full and fair evidentiary hearing is required in ruling on the petition. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 285-87 (1982).

¶ 23    In Martins' motion to dismiss, he moved to strike Miller's affidavit, and argued North Mill was negligent and made misrepresentations to the court about the equipment. The trial court struck portions of Miller's affidavit and granted the motion to dismiss, concluding that North Mill failed to state a meritorious claim upon which relief may be granted. The court noted that North Mill made a promise it could not keep because it did not have possession of both pieces of equipment. As a defaulting party, it could not use section 2-1401 to rescind the settlement agreement and sue on the original debt. The court, thus, dismissed the amended 2-1401 petition with prejudice. We review dismissal *de novo*. *PNC Bank, National Association v. Kusmierz*, 2022 IL 126606, ¶ 10.

¶ 24    In dismissing North Mill's amended 2-1401 petition, the court jumped ahead, ignoring the disputed facts raised in Martins' "response" and failing to provide North Mill with an evidentiary

hearing. See *Ostendorf*, 89 Ill. 2d at 285-87 (when factual allegations in a section 2-1401 petition are challenged, a full and fair evidentiary hearing must be held). Further, in treating the response as a motion to dismiss, the court failed to take all well-pleaded facts in North Mill's amended 2-1401 petition as true and instead held North Mill to an impossible standard.

¶ 25        North Mill's amended 2-1401 petition, supported by Miller's affidavit, sufficiently alleges a mutual mistake of fact, which, if proven, would justify rescission of the settlement agreement. Rescission is a proper remedy for a mutual mistake of fact "when the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo." *In re Marriage of Agustsson*, 223 Ill. App. 3d 510, 519 (1992).

¶ 26        As noted above, the entire settlement in open court was predicated on the belief that North Mill had possession of both pieces of equipment, could provide an inspection of both, and could return both to Martins after all payments were made. Before Martins made any payments, North Mill learned it did not have possession of one piece of equipment. Miller's affidavit explains her mistaken belief at the time she authorized entering into the settlement agreement, and it is clear from the record that everyone, including the court, believed North Mill had both pieces of equipment. Taking this as true, as we must for purposes of a motion to dismiss, would adequately give rise to a mutual mistake of fact that may ultimately warrant rescission of the settlement agreement and vacatur of the dismissal order.

¶ 27        North Mill's petition also suggests fraud by Martins, claiming he knew North Mill did not have the equipment all along and that Martins was in possession of the missing piece. The court never reached this question. Instead, it considered both parties in breach: North Mill for not

providing an inspection of both pieces of equipment, and Martins for failing to make the first timely payment. As North Mill points out, this left the parties with an unenforceable oral settlement agreement that superseded their original written contract, and North Mill without any recourse to collect on the original debt. North Mill should at least get the opportunity to conduct discovery on the whereabouts of the collateral and Martins' knowledge in connection with its amended 2-1401 petition. See *Highview Group, Ltd. v. Willaim Ryan Homes, Inc.*, 2023 IL App (2d) 220019, ¶ 52 (reversing dismissal of defendants' 2-1401 petition and remanding for an evidentiary hearing to determine veracity of fraud allegations).

¶ 28    Based on the pleadings, Miller's affidavit, and materials in the record, we find the circuit court erred in dismissing North Mill's amended 2-1401 petition and finding it failed to allege a meritorious defense. While we express no opinion on the merits of the petition, we note that if North Mill is able to prove the elements under section 2-1401, rescinding the settlement agreement and vacating the dismissal of North Mill's lawsuit would prevent an injustice based on the misapprehension of facts by allowing the parties to either pursue claims against each other or negotiate a new settlement based on the remaining piece of collateral. See *Cipriani*, 202 Ill. App. 3d at 990 ("While section 2-1401 was never intended to give a party a new opportunity to do that which should have been done at an earlier proceeding, it was developed to provide trial courts with equitable powers necessary to grant relief and prevent injustice.").

¶ 29                                    III. CONCLUSION

¶ 30    We affirm the trial court's order denying North Mill's motion to enforce settlement agreement, reverse the dismissal of its amended 2-1401 petition, and remand for an evidentiary hearing on the petition.

¶ 31    Affirmed in part, and reversed and remanded in part.